SEXTON ET AL., APPELLANTS, *v.* CITY OF MASON ET AL., APPELLEES.

[Cite as *Sexton v. Mason,* 117 Ohio St.3d 275, 2008-Ohio-858.]

(No. 2007–0305—Submitted November 27, 2007—Decided March 6, 2008.)

O'CONNOR, J.

{¶ 1} This appeal requires us to address issues regarding the statute of limitations that is applicable to claims for damage to real property occasioned by rainwater draining from adjacent land.

{¶ 2} Plaintiffs-appellants, Larry and Peggy Sexton, assert that flooding and erosion on their property was caused by the defendants' negligent acts on the adjoining property. The trial court and the court of appeals determined that the statute of limitations for appellants' claims expired prior to the filing of their suit because their claims were not based on a continuing trespass but on a permanent trespass that had been fully completed more than four years prior to the filing of the suit. A finding of a continuing trespass would have tolled the statute of limitations. For the reasons that follow, we affirm the judgment of the court of appeals.

I

{¶ 3} The Sextons built a home just outside the city limits of Mason and moved into the home in 1988. A creek runs through the Sextons' property, and they built a bridge over the creek in order for their driveway to cross it.

{¶ 4} In the late 1980s, the development of a subdivision, "Trailside Acres," began on adjacent property within the Mason city limits. Appellee, Rishon Enterprises, Inc. ("Rishon"), was the developer of Trailside Acres. Rishon contracted with appellee McGill Smith Punshon, Inc. ("McGill"), an engineering company, to design the stormwater drainage system for the subdivision. McGill completed all of its engineering services on the subdivision in 1994. Rishon's work on the subdivision was completed in 1995.

{¶ 5} As the development of the subdivision progressed, the Sextons began to experience water problems. The problems worsened in 1992, with water rising in the creekbed, going over the bridge, and flooding the Sextons' property in periods of heavy or prolonged rains. There had been no water problems prior to

the subdivision construction. Therefore, the Sextons attributed the problems to the development.

{¶ 6} In 1995, Peggy Sexton wrote a letter to a Mason city official expressing the Sextons' concerns. That letter stated that the creek at one time had been dry most of the summer and that water in the creek had never been very deep until approximately one to two years after the Sextons built their home in 1988. The letter further stated:

{¶ 7} "The creek, which is now *always* running, frequently floods and comes over our [bridge] headers * * *. The force of the flow is eroding our land, and killing trees on the bank. All of this is coming from the * * * Trailside subdivision.

{¶ 8} " * * *

{¶ 9} "During a storm, I cannot even drive over our bridge, as the water comes over walls that are over a foot above the road. If the creek comes another 2–3 inches higher than it does on a regular basis (like during a good spring rain) our basement will be flooded." (Emphasis sic.)

{¶ 10} In the summer of 2001, after an all-day rain, the Sextons' basement filled with water that entered the house with considerable force. The water rose to a depth of five feet in the basement and damaged the contents. Prior to that event, the Sextons had never experienced flooding inside their home. The Sextons' driveway was blocked by flooding so deep that firemen who responded to a 911 call were unable to drive their vehicle up to the house.

{¶ 11} The Sextons worked with city officials and city employees for a number of years in an attempt to address their water issues, but those discussions, according to Peggy Sexton, "broke down" in 2003. On July 14, 2003, the Sextons filed a complaint against the city and its engineering department concerning the water problems. On August 27, 2003, the Sextons filed an amended complaint that added Rishon and McGill as defendants. One of the Sextons' claims was that the negligence of the defendants caused the flooding of their property.

{¶ 12} The city and Rishon separately moved to dismiss the complaint, or alternatively, for summary judgment. McGill also moved for summary judgment. Along with other arguments, the defendants urged that the complaint was time-barred by the four-year statute of limitations of R.C. 2305.09 because the cause of action had accrued in 1992 (or at the latest in 1995) but the complaint was not filed until 2003.

{¶ 13} A magistrate issued decisions overruling the motions of the defendants. The magistrate held that the Sextons' complaint stated a cause of action for a continuing trespass and that "the action may be brought at any time prior to the

expiration of the prescriptive period of 21 years, but recovery may be had only for damages sustained within four years prior to the filing of the action."

{¶ 14} After the defendants filed objections to the magistrate's decisions, the trial court initially agreed with the magistrate's reasoning. The trial court stated that "[t]here is no dispute that the Plaintiffs first discovered or became aware of the water problems on their property in 1992," so that the statute of limitations began to run at that time. However, the trial court held that the statute of limitations did not bar all of the claims because the Sextons' complaint stated claims for a continuing trespass.

{¶ 15} The trial court later reconsidered its decision and granted summary judgment to all defendants. In granting summary judgment to Rishon and McGill, the trial court ruled that the Sextons' claims were based on a permanent trespass (rather than a continuing trespass as the court had ruled earlier) and that the four-year statute of limitations in R.C. 2305.09 applied to bar all claims. In granting summary judgment to the city, the trial court held, inter alia, that the city was entitled to sovereign immunity under R.C. Chapter 2744.

{¶ 16} The court of appeals affirmed the judgment of the trial court in all respects. In the part of that decision pertinent to this appeal, the court of appeals held that this case involves a permanent rather than a continuing trespass and that the damage to the Sextons' property occurred when the subdivision was constructed. The court of appeals further held that because McGill completed its work on the project in 1994 and because Rishon completed its work in 1995, and there was no ongoing conduct by either defendant after the work was completed, even though damages continued, the "tortious act" of each was completed in those years and the claims were time-barred.

{¶ 17} This court accepted for review only one of the Sextons' propositions of law in this discretionary appeal: "A claim for a continuing trespass may be supported by proof of continuing damages and need not be based on allegations of continuing conduct."[1]  113 Ohio St.3d 1488, 2007-Ohio-1986, 865 N.E.2d 913.

## II

{¶ 18} In *Harris v. Liston* (1999), 86 Ohio St.3d 203, 714 N.E.2d 377, paragraph one of the syllabus, this court held:

{¶ 19} "Tort actions for injury or damage to real property are subject to the four-year statute of limitations set forth in R.C. 2305.09(D)."

---

1. This court declined to review the Sextons' additional proposition of law regarding the court of appeals' affirmance of summary judgment to the city on grounds unrelated to those implicated in the proposition of law accepted for review. Therefore, this appeal involves only the claims against Rishon and McGill.

{¶ 20} Pursuant to *Harris*, which involved facts similar in many respects to those of this case, the four-year statute of limitations of R.C. 2305.09(D) clearly applies to the Sextons' claims.

{¶ 21} In *Harris*, we held:

{¶ 22} "A negligence action against a developer-vendor of real property for damage to the property accrues and the four-year statute of limitations of R.C. 2305.09(D) commences to run when it is first discovered, or through the exercise of reasonable diligence it should have been discovered, that there is damage to the property." 86 Ohio St.3d 203, 714 N.E.2d 377, paragraph two of the syllabus.

{¶ 23} The record fully supports the trial court's observation that for purposes of the discovery rule stated in *Harris*'s second syllabus paragraph, the Sextons discovered the damage in 1992, so the statute of limitations commenced to run at that time. The record also fully supports that the Sextons were aware that the damage to their property was caused by the development of the subdivision.

{¶ 24} Although *Harris* is factually very similar to this case, the Sextons argue that *Harris* is distinguishable and does not control the result here. Conversely, based on the factual similarities of this case and *Harris*, the defendants argue that *Harris* fully controls the result and that further inquiry is unnecessary.

{¶ 25} In *Harris*, the plaintiffs claimed that a property developer "had been negligent in failing to design and construct an adequate water-management system" for the subdivision in which their home was located. 86 Ohio St.3d at 204, 714 N.E.2d 377. The plaintiffs' home had been built by previous owners in 1985, and the water-management system had been completed prior to that time. Id. at 203, 714 N.E.2d 377. The previous owners were aware in 1985 that a "water situation" existed on the property. Id.

{¶ 26} In reversing the trial court's grant of summary judgment to the developer, the court of appeals in *Harris* had held that the plaintiffs' negligence claims were timely filed and that genuine issues of material fact existed regarding the design and implementation of the water-management system. Id. at 204, 714 N.E.2d 377. This court reversed the judgment of the court of appeals. After establishing, as stated in the syllabus, that R.C. 2305.09(D)'s four-year statute of limitations applies to such claims and that the statute commences to run when a plaintiff discovers or should have discovered the damage, this court applied that law to the facts and determined that the plaintiffs' claims were time-barred. Id. at 207–208, 714 N.E.2d 377.

{¶ 27} In particular, this court stated: "Here, from the time the [previous owners] moved into the home in 1985, they were aware that standing water existed on the property and that the land did not drain properly. Thus, since the damage occurred at least as early as 1985, the time of the initial *discovery* by a

*purchaser* that a problem existed regarding the property, appellees' negligence claims, including their claim that [the developer's] negligence created a nuisance thereon, are time-barred. The initial discovery of the problem occurred more than four years before appellees commenced their lawsuit." (Emphasis sic.) Id. at 207–208, 714 N.E.2d 377.

{¶ 28} We agree with appellees that *Harris* largely resolves this appeal. However, this case raises an additional issue that was not specifically addressed in *Harris*. Therefore, further consideration is in order concerning whether the Sextons' claims in this case are based on a permanent completed trespass, or whether they are based on a continuing trespass.

{¶ 29} In *Valley Ry. Co. v. Franz* (1885), 43 Ohio St. 623, 4 N.E. 88, which was not cited in *Harris,* this court discussed the distinction between a permanent and a continuing trespass. In *Valley Ry. Co.,* the railway company, in 1874, purposefully diverted the course of the Cuyahoga River, an action that caused the river over time to wear away the bank and to change its course even further so that the riverbed eventually ran over Franz's land. Id. at 625, 4 N.E. 88. Franz filed suit in 1881, and the railway company argued that the suit was barred by the four-year statute of limitations. Id.

{¶ 30} This court determined that the trespass was a continuing one and that the statute of limitations had not expired. Id. at 628, 4 N.E. 88. This court first discussed an ordinary trespass, which typically occurs when a defendant enters another person's land:

{¶ 31} "When a man commits an act of trespass upon another's land, and thereby injures such other at once and to the full extent that such act will ever injure him, he is liable at once for this one act and all its effects; and the time of the statute of limitations runs from the time of such act of trespass. To this extent only is the case of *Kansas Pacific Railway v. Mihlman* [ (1876) ], 17 Kan. 224 [1876 WL 947], cited here, as the court found that the trespass upon complainant's land was a single completed act. And the same is true of the case of *Williams v. Pomeroy Coal Company,* 37 Ohio St. 583 [1882 WL 23]." Id. at 625–626, 4 N.E. 88.

{¶ 32} This court then discussed how a defendant's completed act undertaken on another person's land can sometimes be a continuing trespass:

{¶ 33} "But where the act of trespass is a permanent trespass, as the erection of buttresses to support a turnpike road (as in *Holmes* v. *Wilson,* 10 Ad. & El. 503) or the erection and maintenance of a permanent building (as in *Thompson v. Gibson,* 7 M. & W. 456), it may be said to be a continuing trespass or nuisance for which a cause of action accrues, and may be brought at any time until, by adverse use or possession, the trespasser has enforced an adverse claim that has ripened, and has become a presumptive right or a valid estate." Id. at 626, 4 N.E. 88.

{¶ 34} This court then discussed the standards applicable to the present situation, involving a defendant's act on the defendant's land that affects another person's land:

{¶ 35} "And when the owner of land rightly and lawfully does an act entirely on his own land, and by means of such act puts in action, or directs a force against, or upon, or that affects another's land, without such other's consent or permission, such owner and actor is liable to such other for the damages thereby so caused the latter, and at once a cause of action accrues for such damages; and such force, if so continued, is continued by the act of such owner and actor, and it may be regarded as a continuing trespass or nuisance; and each additional damage thereby caused is caused by him and is an additional cause of action; and until such continued trespass or nuisance by adverse use ripens into and becomes a presumptive right and estate in the former, the latter may bring his action." Id. at 627, 4 N.E. 88.

{¶ 36} Finally, this court concluded:

{¶ 37} "The facts stated in the amended petition show that the Valley Railway Company diverted the stream and turned its course and current against and over the lands of Franz, and thereby caused the injury complained of. The company remained upon its own land, and cut the new channel and took control of the stream, and directed its course when the same passed from its land and its control, and has ever since so controlled and directed the stream that has caused the damage complained of.

{¶ 38} "The amended petition states a cause of action that is not barred by the statute of limitations provided for such cases." Id. at 628, 4 N.E. 88.

{¶ 39} The court of appeals in the case sub judice applied the reasoning of *Valley Ry. Co.* to hold that " '[a] permanent trespass occurs when the defendant's tortious act has been fully accomplished, but injury to the plaintiff's estate from that act persists in the absence of further conduct by the defendant. In contrast, a continuing trespass results when the defendant's tortious activity is ongoing, perpetually creating fresh violations of the plaintiff's property rights.' " 2007-Ohio-38, 2007 WL 53304, at ¶ 16, quoting *Reith v. McGill Smith Punshon, Inc.*, 163 Ohio App.3d 709, 2005-Ohio-4852, 840 N.E.2d 226, ¶ 49.

{¶ 40} In reaching this result, the court of appeals emphasized two specific statements from *Valley Ry. Co.* The first is that a continuing trespass or nuisance exists when force is " 'continued by the act of [a defendant] owner and actor.' " 2007-Ohio-38, 2007 WL 53304, at ¶ 14, quoting *Valley Ry. Co.* at 627, 4 N.E. 88. The second is that the defendant in *Valley Ry. Co.* " 'directed [the stream's] course * * * and has ever since so controlled and directed the stream that has caused the damage complained of.' " 2007-Ohio-38, 2007 WL 53304, at ¶ 15, quoting *Valley Ry. Co.* at 628, 4 N.E. 88.

{¶ 41} The court of appeals further reasoned that "'a continuing trespass occurs when there is some continuing or ongoing tortious activity attributable to the defendant. Conversely, a permanent trespass occurs when the defendant's tortious act has been fully accomplished. * * * Thus, the determinative question centers upon the nature of the defendant's tortious conduct, not upon the nature of the damage caused by that conduct.' * * * That is, a trespass under Ohio law is a continuing trespass only if the trespass itself, and not the ongoing injury or harm caused by a past, completed misdeed, is continuing. Ongoing conduct is the key to a continuing trespass." 2007-Ohio-38, 2007 WL 53304, at ¶ 17, quoting *Abraham v. BP Exploration & Oil, Inc.*, 149 Ohio App.3d 471, 2002-Ohio-4392, 778 N.E.2d 48, ¶ 27.

{¶ 42} The reasoning of the court of appeals is consistent with a number of recent decisions from other appellate districts, many of which involved similar factual situations. One such case is *Reith v. McGill Smith Punshon, Inc.*, 163 Ohio App.3d 709, 2005-Ohio-4852, 840 N.E.2d 226, a decision of the First Appellate District that involved facts remarkably similar to those of the case sub judice. In that case, the Reiths believed that flooding on their property was caused by construction in the early 1990s of a subdivision across the street from their house, and in 2003 sued the developer of the subdivision and McGill (which is also a defendant in the present case), the designer of the subdivision's water-drainage system. Id. at ¶ 1, 14.

{¶ 43} Serious flooding of the property in *Reith* began in 1993 and 1994, so that the four-year statute of limitations began to run "no later than 1994." Id. at ¶ 38, 46. In affirming the trial court's conclusion that the claims against McGill were barred by the four-year statute of limitations, *Reith* focused on the undisputed fact that McGill had completed its design of the drainage system in 1994. Id. at ¶ 50. The court reasoned: "With McGill's allegedly tortious act completed, any ongoing injury to the Reiths' property would have had to be considered a permanent trespass. Under these circumstances, the Reiths were required to bring their trespass claim against McGill within four years of McGill's tortious act." Id. at ¶ 51.

{¶ 44} Other recent decisions that are also consistent with the court of appeals' reasoning in this case include *Weir v. E. Ohio Gas Co.*, 7th Dist. No. 01 CA 207, 2003-Ohio-1229, 2003 WL 1194080, ¶ 28 (because defendant committed only one tortious act and did not retain control over the property or the contaminants, trespass was not continuous); *Abraham v. BP Exploration & Oil, Inc.*, 149 Ohio App.3d 471, 2002-Ohio-4392, 778 N.E.2d 48, ¶ 28 (because defendant's tortious activity, if any, stopped when it vacated the premises and gave up possession and control of the property, trespass was not continuous); *Hartland v. McCullough Constr., Inc.* (July 14, 2000), 6th Dist. No. OT–99–058, 2000 WL 966027 (defen-

dants' tortious activity constituted a permanent trespass because there was no ongoing conduct by the defendants); *Frisch v. Monfort Supply Co.* (Nov. 21, 1997), 1st Dist. No. C–960522, 1997 WL 722796 (because defendants' tortious act was completed and there was no ongoing conduct by the defendants even though damages to the plaintiff's property continued, trespass was permanent rather than continuing).

{¶ 45} We fully agree with the reasoning of these courts. The defendant's ongoing conduct or retention of control is the key to distinguishing a continuing trespass from a permanent trespass. We hold that a continuing trespass in this context occurs when there is some continuing or ongoing allegedly tortious activity attributable to the defendant. A permanent trespass occurs when the defendant's allegedly tortious act has been fully accomplished.

{¶ 46} Our resolution of this issue is supported by our decision in *State v. Swartz* (2000), 88 Ohio St.3d 131, 723 N.E.2d 1084, which involved a criminal prosecution under R.C. 3767.13(C) for unlawfully obstructing or impeding the passage of a stream. In *Swartz*, the trial court had dismissed the action as barred by the applicable two-year statute of limitations (because more than two years had passed since the defendant erected the bridge that was allegedly the source of the damage), and the court of appeals had affirmed. 88 Ohio St.3d at 131–132, 723 N.E.2d 1084.

{¶ 47} This court reversed and held that the statute of limitations did not bar the prosecution, holding at the syllabus: "Where one creates a nuisance as defined in R.C. 3767.13(C) and permits it to remain, so long as it remains, and is within the control of the actor, the nuisance constitutes a continuing course of conduct tolling the limitations period * * *." This court in *Swartz* recognized that although *Valley Ry. Co. v. Franz* involved a civil cause of action, that case "is instructive as to the nature of an act of nuisance that is under the control of the actor and continues to cause damage." 88 Ohio St.3d at 134, 723 N.E.2d 1084.

{¶ 48} This court in *Swartz* discussed the Fourth District Court of Appeals' decision in *Boll v. Griffith* (1987), 41 Ohio App.3d 356, 535 N.E.2d 1375, a "similar case" to *Valley Ry. Co. v. Franz*, which also involved a nuisance that was under the control of a defendant. In *Boll*, the plaintiff and defendant were adjoining landowners, with each owning a series of row houses connected by a common brick wall. In 1978, a third party hired by the defendant razed the row houses on the defendant's parcel. More than four years later, the plaintiff sued, alleging that remnants of the razed structures remained attached to the common wall and that their weight gradually damaged the wall. The court of appeals in *Boll* reversed the trial court's dismissal of the complaint as time-barred under R.C. 2305.09(D). This court in *Swartz* noted that the court of appeals in *Boll* held that "the claim was a continuing trespass, even though the defendant's last act

preceded the lawsuit by more than four years, the relevant limitations period for that tort, and even though the defendant had sold the property in the interim. The court of appeals also reinstated the plaintiff's action against the new owner who had allowed the condition to continue to exist." *Swartz*, 88 Ohio St.3d at 134, 723 N.E.2d 1084, citing *Boll*, 41 Ohio App.3d at 358, 535 N.E.2d 1375.

{¶ 49} Although there are several factors distinguishing the present case from *Swartz* (the most significant being that *Swartz* was a criminal prosecution) and although *Swartz* did not cite or discuss *Harris*, the broad reasoning of *Swartz* applies here. *Swartz* focused on a continuing course of conduct and the control of that conduct by the defendant to determine that the statute of limitations had not expired. In this case, that continuing course of conduct is absent.[2]

{¶ 50} In arguing that their claims meet the standards for a continuing trespass, the Sextons point out that in *Nieman v. NLO, Inc.* (C.A.6, 1997), 108 F.3d 1546, 1559, the Sixth Circuit Court of Appeals, relying in large part on the decision of the Fourth District Court of Appeals in *Boll*, held that "under Ohio law, a claim for continuing trespass may be supported by proof of continuing damages and need not be based on allegations of continuing conduct." However, one Ohio appellate court has observed that it was the dissent in *Nieman* that instead properly interpreted Ohio law on this issue. See *Frisch*, 1st Dist. No. C–960522, 1997 WL 722796 (a continuing trespass occurs when the defendant's *tortious activity is ongoing*, perpetually creating fresh violations of the plaintiff's property rights). The dissent in *Nieman* took a very different view of *Boll* than did the *Nieman* majority, citing *Boll* as a case in which the defendants' tortious activity was ongoing. See *Nieman*, 108 F.3d at 1567 (Krupansky, J., dissenting) (in *Boll*, "the defendant's continual unlawful act was his failure to extract tangible, moveable matter from the plaintiff's real estate which [the defendant] at

---

2. In comparing the situation in this case to the situations in *Valley Ry. Co.* and *State v. Swartz*, the dissent does not recognize the significance of the defining factor that distinguishes this case from those cases. The dissent states that "[t]he only factual difference" between this case and *Valley Ry. Co.* "is that the trespasser in *Valley Ry. Co.* continued to own the land from which water had been diverted, whereas in this case the trespasser sold the land from which water had been diverted." The dissent additionally states that "the only apparent reason for the disparate outcomes" in this case and in *Swartz* "is that Swartz retained control over his property, whereas in this case the tortfeasor sold the property." These supposedly minor distinguishing features downplayed by the dissent go to the precise reason that a continuing trespass is fundamentally different from a permanent trespass. When a defendant retains control over a particular situation (as in *Valley Ry. Co.* and in *Swartz*), the defendant has the ability to rectify the situation, the trespass is therefore a continuing one, and the running of the statute of limitations is tolled. However, when a defendant no longer exerts control over a particular situation (as in this case, in *Harris*, and in the appellate cases cited in this opinion), the defendant no longer has the ability to rectify the situation. In the latter circumstance, the trespass is permanent, so that it is entirely appropriate for the statute of limitations to run, and, thus, the plaintiff must bring suit within four years of the fully completed tortious act.

all times had a duty to remove"). See also *Weir*, 2003-Ohio-1229, 2003 WL 1194080, ¶ 27 (the party deemed liable for a continuing trespass in *Boll* retained control over the source of the trespass, in that "the defendant had control of the heavy debris that was damaging the common wall").

{¶ 51} As our discussion in *Swartz* indicates, *Boll* did involve a continuing course of conduct by the defendants, establishing that it was the dissent in *Nieman* that took the proper view of *Boll* and that correctly interpreted Ohio law. Because the reasoning of the majority in *Nieman* is incompatible with our holdings in *Swartz* and in this case, *Nieman*'s holding is an inaccurate character-ization of Ohio law, and the Sextons' reliance on that decision and its interpreta-tion of *Boll* is misplaced. Furthermore, *Nieman* was decided prior to this court's decision in *Harris*, which also substantially clarified the law in this area.

{¶ 52} Our result is also fully consistent with *Harris* and readily reconciles with the situation in that case. In *Harris*, the alleged negligent conduct of the defendant was completed prior to 1985, and the defendant exerted no further control over the alleged source of the plaintiffs' damages after that point. Similarly, in this case, the conduct of the defendants was completed more than four years prior to the filing of the complaint. We reject the Sextons' arguments that this court should interpret *Harris* narrowly and that *Harris* is distinguish-able because it involved conduct that constituted a nuisance rather than a trespass. For purposes here, that distinction is immaterial.

{¶ 53} The adoption of the discovery rule in *Harris* for claims such as those raised here eases many of the potential concerns regarding a standard that focuses on the ongoing conduct of a defendant to determine whether the statute of limitations is tolled. Under *Harris*, the statute of limitations does not begin to run until a plaintiff discovers, or reasonably should have discovered, damage to the property. Therefore, a plaintiff who could not reasonably have discovered that he or she was damaged will not be foreclosed from filing suit within four years of the date when the damage becomes evident or should have become evident, even if the defendant did not exert continuing control over the alleged source of the damage during that period.

## III

{¶ 54} As noted above, the record establishes that the four-year statute of limitations governing the Sextons' claims began to run in 1992. So long as McGill and Rishon engaged in continuing conduct through their work on Trailside Acres, the expiration of the statute of limitations was tolled, with the Sextons' potential recovery on any claims limited to damages only within the four-year period that would have preceded the filing of a suit.

{¶ 55} However, once McGill and Rishon completed their respective work on Trailside Acres and no longer exerted control over that property, the alleged trespass was completed, and the four-year statute of limitations definitively began to run. Because McGill completed its work in 1994, the four-year statute of limitations as to it expired in 1998. Because Rishon completed its work on Trailside Acres in 1995, the four-year statute of limitations as to it expired in 1999. The Sextons filed suit in 2003, well after the statute of limitations expired. Their complaint was untimely as a matter of law, and the trial court properly granted summary judgment under Civ.R. 56(C).

{¶ 56} For all the foregoing reasons, we affirm the judgment of the court of appeals.

Judgment affirmed.

MOYER, C.J., and LUNDBERG STRATTON, LANZINGER, and CUPP, JJ., concur.

PFEIFER and O'DONNELL, JJ., dissent.

---

PFEIFER, J., dissenting.

{¶ 57} I dissent because the majority opinion's excessive reliance on the lower court's flawed analysis of *Valley Ry. Co. v. Franz* (1885), 43 Ohio St. 623, 4 N.E. 88, leads to a holding that is unjust and likely to result in the filing of many unnecessary-but-for-this-opinion lawsuits. The majority opinion concludes that a "defendant's ongoing conduct or retention of control is the key to distinguishing a continuing trespass from a permanent trespass. We hold that a continuing trespass in this context occurs when there is some continuing or ongoing allegedly tortious activity attributable to the defendant. A permanent trespass occurs when the defendant's allegedly tortious act has been fully accomplished." This is a legitimate conclusion that other courts have reached, as the majority opinion discusses. But this conclusion is not supported by *Valley Ry. Co.*, which the majority opinion does not overrule.

{¶ 58} Even though the events in *Valley Ry. Co.* occurred over 100 years ago, they are remarkably similar to the events in this case. In both cases, water was diverted, which initially caused little or no damage. Id. at 624, 4 N.E. 88. In both cases, the diversion of the water was permanent, required no ongoing action by the diverter, and ultimately caused considerable damages. Id. at 625, 4 N.E. 88. In both cases, the damaged party complained shortly after realizing that he had been damaged. Id. at 624, 4 N.E. 88. In both cases, the damaged party did not file suit because the initial damages were modest. Id. The only factual difference is that the trespasser in *Valley Ry. Co.* continued to own the land from which water had been diverted, whereas in this case, the trespasser sold the land

from which water had been diverted. Id. Despite these factual similarities, the majority opinion concludes that Sexton may not proceed with a lawsuit even though Franz was allowed to.

{¶ 59} This conclusion derives from a flawed analysis of *Valley Ry. Co.* The majority opinion cites two statements from the lower court opinion to bolster its conclusion that the trespass in *Valley Ry. Co.* was continuing, not permanent. The majority opinion states that "a continuing trespass or nuisance exists when force is ' "continued by the act of [a defendant] owner or actor." ' 2007-Ohio-38, 2007 WL 53304, at ¶ 14, quoting *Valley Ry. Co.* at 627, 4 N.E. 88." The majority opinion also states that "the defendant in *Valley Ry. Co.* ' "directed [the stream's] course * * * and has ever since so controlled and directed the stream that has caused the damage complained of." ' 2007-Ohio-38, 2007 WL 53304, at ¶ 15, quoting *Valley Ry. Co.* at 628, 4 N.E. 88." These statements, however, are not supported by *Valley Ry. Co.*, which states that "the only act the railway company ever did to cause the injury, was done in November, 1874, by changing the channel of the river." *Valley Ry. Co.* at 625, 4 N.E. 88. *Valley Ry. Co.* is not a continuing trespass case, as the majority opinion would have us believe; *Valley Ry. Co.* is a permanent trespass case in which damages but not tortious conduct were continuing.

{¶ 60} Some of the language from *Valley Ry. Co.* is confusing—for instance, the statement "where the act of trespass is a permanent trespass, * * * it may be said to be a continuing trespass or nuisance for which a cause of action accrues, and may be brought at any time." 43 Ohio St. at 626, 4 N.E. 88. The beginning of the quote suggests that the court is discussing permanent trespass, but the remainder of the quote, the context, and the holding of the case reveal that the court is talking about a trespass that would otherwise be considered permanent (because the tortious conduct is complete) but that should be considered continuing because the damage is ongoing. See *Kansas Pacific Ry. v. Mihlman* (1876), 17 Kan. 224, 231, 1876 WL 947 ("There are cases in which the original act is considered as a continuing act, and daily giving rise to a new cause of action. Where one creates a nuisance, and permits it to remain, so long as it remains it is treated as a continuing wrong, and giving rise, over and over again, to causes of action"). See also *Nieman v. NLO, Inc.* (C.A.6, 1997), 108 F.3d 1546, 1555–1556.

{¶ 61} The majority opinion quotes the key passage from *Valley Ry. Co.*, but attributes the wrong meaning to it. "And when the owner of land rightly and lawfully does an act entirely on his own land, and by means of such act puts in action, or directs a force against, or upon, or that affects another's land, without such other's consent or permission, such owner and actor is liable to such other for the damages thereby so caused the latter, and at once a cause of action

accrues for such damages; and such force, if so continued, is continued by the act of such owner and actor, and it may be regarded as a continuing trespass or nuisance; and each additional damage thereby caused is caused by him and is an additional cause of action; and until such continued trespass or nuisance by adverse use ripens into and becomes a presumptive right and estate in the former, the latter may bring his action." Id. at 627, 4 N.E. 88. It is possible to read this passage to support a conclusion that a trespass continues only if the conduct of the original actor also continues. But this reading is strained, and requires us to ignore the fact that in *Valley Ry. Co.* the conduct of the original actor did not continue. I conclude, as have other judges, that "under Ohio law, a claim for continuing trespass may be supported by proof of continuing damages and need not be based on allegations of continuing conduct." *Nieman,* 108 F.3d at 1559; *Wood v. Am. Aggregates Corp.* (1990), 67 Ohio App.3d 41, 45, 585 N.E.2d 970 (statute of limitations did not bar suit because damages were ongoing even though allegedly tortious conduct was not). See *Hoery v. United States* (Colo. 2003), 64 P.3d 214, 222 (a continuing trespass occurred when the United States failed "to stop the toxic pollution plume that it created from entering Hoery's property," even though the last tortious act of the United States occurred outside the statute of limitations); *Graham v. Beverage* (2002), 211 W.Va. 466, 477, 566 S.E.2d 603 (claim allowed as not outside the statute of limitations because there were continuing injuries, even though there was no continuing conduct other than a failure to correct the problem).

{¶ 62} The majority opinion also relies on *Reith v. McGill Smith Punshon, Inc.,* 163 Ohio App.3d 709, 2005-Ohio-4852, 840 N.E.2d 226. *Reith* is factually similar, but it doesn't discuss or mention the seminal *Valley Ry. Co.* and therefore is of no consequence in helping us decide this case.

{¶ 63} The majority opinion also relies on *State v. Swartz* (2000), 88 Ohio St.3d 131, 723 N.E.2d 1084, from which I dissented. My seemingly contrary position in this case is based on the different principles undergirding a civil statute of limitations as opposed to a criminal statute of limitations. See R.C. 2901.04(A) and (B). In *Swartz,* this court stated that "where one creates a nuisance * * * and permits it to remain, so long as it remains, and is within the control of the actor, the nuisance constitutes a continuing course of conduct tolling the limitations period * * *. Thus, because the defendant permitted the nuisance to remain despite the plaintiff's repeated requests to abate, the period of limitations did not begin to run until the continuing course of conduct or the accused's accountability for it terminated." 88 Ohio St.3d at 135, 723 N.E.2d 1084. In *Swartz,* the court concluded that the statute of limitations was tolled; in this case, the statute of limitations is not tolled. But these disparate outcomes are not the result of the distinction between continuing and permanent trespass, as the majority would have us believe. Instead, the only apparent reason for the disparate outcomes is

that Swartz retained control over his property, whereas in this case, the tortfeasor sold the property. Thus, even though Swartz and the tortfeasor in this case did the same thing—they completed an act that affected the flow of water and then did not perform another substantive affirmative act with respect to the water flow—liability is different. Allowing tortfeasors to avoid responsibility for their bad acts by selling their property is not a proper foundation for a legal principle.

{¶ 64} *Valley Ry. Co.* allowed a lawsuit for trespass even though the act of trespass was not continuing. So should we. In this case, we should hold that the Sextons may go forward based on damages incurred within the statutory period from the day they filed their suit. They may have difficulty establishing fault, and they may be found partially at fault for building a bridge over a waterway, but they should have a chance to recover damages for the harm they have suffered.

{¶ 65} Much of this discussion is arcane, and many of the distinctions are fine, but one thing is clear: the rule espoused in the majority opinion will yield the following undesirable effects.

{¶ 66} (1) People will continue to suffer significant damages and have no recourse because they did not file suit when they incurred modest damages. In this case, the Sextons could have filed suit when the initial puddles formed in their driveway. Instead, they waited until after their basement flooded to file suit. Experience indicates that most people will not sue for modest damages or inconvenience, even when they suspect that another person is at fault. Most people understand that modest damages and inconvenience are a part of life. See *Reith*, 163 Ohio App.3d 709, 2005-Ohio-4852, 840 N.E.2d 226, at ¶ 5, 14 (the Reiths filed suit after their house flooded, not when water first pooled in their driveway).

{¶ 67} (2) Tortfeasors will be able to commit torts with impunity because most people do not pursue a lawsuit at the first occurrence of modest damages. Here, Sexton tried to resolve the flooding problem through the city of Mason. In *Reith*, the Reiths initially attempted to resolve their problem by contacting county agencies. Id. at ¶ 13. In each case, the attempt to resolve the problem outside the court system was part of the reason the lawsuit was not timely filed. In each case, the party at fault escaped liability even though it had performed an act that it should not have performed, thereby causing damage to another person. So much for justice.

{¶ 68} (3) Developers will have one more incentive to sell property quickly: to begin the running of the statute of limitations relating to their faulty drainage systems. Being able to avoid liability for a faulty drainage system based on the

statute of limitations' running may encourage developers to pursue cost savings by purposely designing or installing inadequate drainage systems.

{¶ 69} (4) Going forward, any person in Ohio who thinks that he or his property has been harmed or who thinks that he or his property might be harmed by the act of a neighbor will file suit first and ask questions later. There is no other lesson to take from this case. I dissent.

O'DONNELL, J., concurs in the foregoing opinion.

---

Whitaker & Shade, L.L.C., and James A. Whitaker, for appellants.

Reminger & Reminger Co., L.P.A., and B. Scott Jones, for appellee Rishon Enterprises, Inc.

Herfel Law Firm, L.L.C., and Gary L. Herfel, for appellee McGill Smith Punshon, Inc.

Dinsmore & Shohl, L.L.P., Gary E. Becker, and Melissa L. Korfhage, for appellee city of Mason.

Vorys, Sater, Seymour and Pease, L.L.P., Richard D. Schuster, and Michael J. Hendershot, urging affirmance for amicus curiae, Ohio Manufacturers' Association.