[Cite as *Coughlin v. Acock Assoc. Architects, L.L.C.* , 2011-Ohio-3212.]

COURT OF APPEALS
DELAWARE COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  |  |
|---|---|---|
| | : | JUDGES: |
| JOHN COUGHLIN, et al., | : | John W. Wise, P.J. |
| | : | Julie A. Edwards, J. |
| Plaintiffs-Appellants | : | Patricia A. Delaney, J. |
| | : | |
| -vs- | : | Case No. 10CAE060044 |
| | : | |
| | : | |
| ACOCK ASSOCIATES | : | O P I N I O N |
| ARCHITECTS, LLC, et al., | | |
| | | |
| Defendants-Appellees | | |

CHARACTER OF PROCEEDING:      Civil Appeal from Delaware County
                             Court of Common Pleas Case No.
                             08-CV-A-10-1455

JUDGMENT:                    Affirmed

DATE OF JUDGMENT ENTRY:      June 27, 2011

APPEARANCES:

For Plaintiffs-Appellants                 For Defendants-Appellees

BRIAN L. BUZBY                            JOSEPH E. CAVASINNI
DANIEL B. MILLER                          Reminger Co., LPA
Porter, Wright, Morris &                  1400 Midland Building
Arthur, LLP                               101 Prospect Avenue, West
41 South High Street                      Cleveland, Ohio  44115-1093
Columbus, Ohio  43215-6194

J. MILES GIBSON                           For Michael Matrka, Inc.
Wiles Boyle Burkholder & Bringardner, LPA
300 Spruce Street – Floor One             LUTHER L. LIGGETT, JR.
Columbus, Ohio  43215                     Luper, Neidenthal & Logan
                                          50 West Broad Street – Suite 1200
                                          Columbus, Ohio  43215-3374

*Edwards, J.*

{¶1} Plaintiffs-appellants, John Coughlin and Diana Coughlin, appeal from the May 11, 2010, Judgment Entry of the Delaware County Court of Common Pleas granting the Motion for Summary Judgment filed by defendant-appellee Acock Associates Architects, LLC.

STATEMENT OF THE FACTS AND CASE

{¶2} In approximately June of 1998, appellants John and Diana Coughlin retained appellee Acock Associates Architects, LLC to provide architectural and design services for an approximately $2.6 million dollar project involving a master bedroom addition to their home. The parties had an oral contract. On or about November of 1998, appellants also engaged Michael Matrka, Inc. to serve as their contractor on the project. The construction project was completed on or about 2002 according to appellants' amended complaint.

{¶3} Sometime after the completion of the project, appellants began to experience water intrusion through the stone façade of their house, leaking around skylights and cracked skylight glass. During her deposition, appellant Diana Coughlin testified that the project was completed in January or February of 2001. She testified that right after her daughter was born in March of 2001, the roof started leaking and that appellants attempted to make Band-aid repairs. She testified that she believed that in the summer of 2001, water was trailing down the stone wall behind appellants' master bed and also in an area where the bridge meets the stone wall. When asked how bad the leak was, she testified that it was "[f]airly bad. You could see pretty substantial stains running down the wall, so maybe six inches wide, the length of the wall."

Deposition of Diana Coughlin at 35. Appellant Diana Coughlin further testified, when asked whether she thought that some work was done improperly, that the "leaks would indicate that that was not done properly." Id at 36. She further testified that the leaking was a continual problem and equated it to the show Green Acres.

{¶4}    Appellant Diana Coughlin further testified that maybe a few months after the leak in the wall, which was in July of 2001, there were leaks in an area where there was fiber optic lighting and that drywall started falling. She testified that the skylights above their bed leaked, causing debris to fall, and that the skylight panels cracked shortly after July 2001. When asked for a more specific time frame, she testified that she thought the skylight leaking and cracking occurred maybe five months later. As a result, glass panels had to be replaced. According to appellant Diana Coughlin, the skylights continued leaking. She also testified that all of the leaks occurred within the first year of the project being completed and that condensation on the bedroom windows was continuous and was so bad that thick ice formed inside the windows. According to appellant Diana Coughlin there were also leaks on both sides of a semi-circular window at the end of her closet within the first year.

{¶5}    When questioned about how many times the roofer came out to deal with the problems with the skylight in her closet, appellant Diana Coughlin testified as follows:

{¶6}    "A. Maybe two or three times.  All of these were pretty - - have been ongoing until we just made the decision to just go ahead and get Ralph involved and see what it's really going to take to - - you know, we had been Band-Aiding for years, from replacing granite in the hallways to where it leaked, replacing the flooring because

it cracked.  You know, the leaks were just becoming more than just a nuisance; they were becoming a structural ….

{¶7}   "You know, and when the mold started to grow, you just don't want to mess around with that stuff, so …."  Deposition of Diana Coughlin at 59.

{¶8}   She also testified that there were leaks outside the shower, in the ceiling of her husband's closet, and that there was a leak from the bathtub that leaked down to the sauna.  In all, leaks and other water related problems developed in at least 16 areas of the master bedroom addition.

{¶9}   The following is an excerpt from appellant Diana Coughlin's deposition testimony:

{¶10}  "Q. So the skylight leaked continuously.  Was that skylight above the shower, was it the same situation where Band-Aid repairs were made on several occasions until - -

{¶11}  "A. Not so much on that one because we replaced the glass and we just started putting a pan underneath it.

{¶12}  "Q. All right.

{¶13}  "A. Literally, like Green Acres.

{¶14}  "And so, at that point, when this got to that level, it's just – it was – you know, we had replaced the glass.  It just was to the point like, 'Okay, this is all going to cave in here in a moment, so let's' - - we could Band-Aid until we're 99, so let's get Ralph in here and see: How involved is this going to be?  How integral do we have to get?  Can they Band-Aid it on the top?  Is there something they can do that's easy to fix?"  Deposition of Diana Coughlin at 63.

{¶15} Appellant John Coughlin, during his deposition, testified that soon after completion of construction, they saw moisture on the windows and that you could not see out of them. He further testified that water from the windows would run down and get all over the carpet or floor or whatever was beneath the window and would ruin the same. Appellant John Coughlin testified that water came through the skylights and that they had to be replaced more than once and that water "came through the – between the  roof and the stone. It pretty much came through just about everywhere." Deposition of John Coughlin at 51. He testified that the roof leaked everywhere and that water came through the roof and got underneath tile in the bathroom and pushed the tile up. As a result, the bathtub was broken. He further testified that as a result of the leaks, appellants "slept with an umbrella for a long time." Id at 65.

{¶16} In June 2006 or early 2007, appellants hired Ralph Fallon Builders to remedy the problems.

{¶17} On October 31, 2008, appellants filed a complaint against appellee alleging negligence, breach of contract, promissory estoppel and quantum meruit. On January 20, 2009, appellants filed an amended complaint adding Michael Matrka, Inc. as a defendant. Matrka subsequently filed a Motion to Dismiss the complaint alleging that appellants had, after terminating him, signed a release of all claims against him. The trial court converted such motion to a Motion for Summary Judgment and, as memorialized in a Judgment Entry filed on December 16, 2009, granted such motion.

{¶18} Thereafter, on March 1, 2010, appellee filed a Motion for Summary Judgment. Appellee, in its motion, alleged that appellants' claims were barred by the

applicable statute of limitations. Pursuant to a Judgment Entry filed on May 11, 2011, the trial court granted such motion.

{¶19} Appellants now raise the following assignments of error on appeal:

{¶20} "I. THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT PURSUANT TO CIVIL RULE 56 THAT DETERMINED CONTESTED ISSUES OF FACT RESERVED FOR THE JURY AND WAS CONTRARY TO LAW DISMISSING PLAINTIFFS, JOHN AND DIANA COUGHLIN'S CLAIMS THAT DEFENDANT, ACOCK ASSOCIATES ARCHITECTS, LLC, WAS NEGLIGENT IN THE PERFORMANCE OF ITS WORK ON PLAINTIFFS' BEHALF.

{¶21} "II. THE TRIAL COURT ERRED IN GRANTING A SUMMARY JUDGMENT PURSUANT TO CIVIL RULE 56 THAT DETERMINED CONTESTED ISSUES OF FACT RESERVED FOR A JURY AND WAS CONTRARY TO LAW DISMISSING PLAINTIFFS, JOHN AND DIANA COUGHLIN'S CLAIMS THAT DEFENDANT, ACOCK ASSOCIATES ARCHITECTS, LLC, BREACHED ITS CONTRACT WITH PLAINTIFFS."

Summary Judgment Standard

{¶22} Summary judgment proceedings present the appellate court with the unique opportunity of reviewing the evidence in the same manner as the trial court. *Smiddy v. The Wedding Party, Inc.* (1987), 30 Ohio St.3d 35, 36, 506 N.E.2d 212. As such, we must refer to Civ.R. 56 which provides, in pertinent part: "* * * Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case and written stipulations of fact, if any, timely filed in the action, show that there is

no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. * * * A summary judgment shall not be rendered unless it appears from such evidence or stipulation and only therefrom, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence or stipulation construed most strongly in the party's favor. * * * "

{¶23} Pursuant to the above rule, a trial court may not enter a summary judgment if it appears a material fact is genuinely disputed. The party moving for summary judgment bears the initial burden of informing the trial court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. The moving party may not make a conclusory assertion that the non-moving party has no evidence to prove its case. The moving party must specifically point to some evidence which demonstrates the non-moving party cannot support its claim. If the moving party satisfies this requirement, the burden shifts to the non-moving party to set forth specific facts demonstrating there is a genuine issue of material fact for trial. *Vahila v. Hall,* 77 Ohio St.3d 421, 429, 1997–Ohio–259, 674 N.E.2d 1164, citing *Dresher v. Burt,* 75 Ohio St.3d 280, 1996–Ohio–107, 662 N.E.2d 264.

{¶24} It is pursuant to this standard that we review appellants' assignments of error.

I

**{¶25}** Appellants, in their first assignment of error, argue that the trial court erred in granting summary judgment to appellee on appellants' negligence claim. We disagree.

**{¶26}** As is stated above, the trial court found that appellant's negligence claim was barred by the statute of limitations contained in R.C. 2305.09. The parties agree that appellants' negligence claim against appellee is subject to the four year statute of limitations contained in R.C. 2305.09(D). "Tort actions for injury or damage to real property are subject to the four-year statute of limitations set forth in R.C. 2305.09(D)." *Harris v. Liston*, 86 Ohio St.3d 203, 1999-Ohio-159, 714 N.E.2d 377, paragraph one of the syllabus. The limitations period begins to run "when it is first discovered, or through the exercise of reasonable diligence it should have been discovered, that there is damage to the property." Id. at paragraph two of the syllabus. See *Sexton v. Mason*, 117 Ohio St.3d 275, 2008 Ohio 858, 883 N.E.2d 1013, at paragraphs 52-53. The Ohio Supreme Court has defined reasonable diligence as a "fair, proper, and due degree of care and activity, measured with reference to the particular circumstances; such diligence, care, or attention as might be expected from a man of ordinary prudence and activity." *Sizemore v. Smith* (1983), 6 Ohio St.3d 330, 332, 453 N.E.2d 632. The court emphasized, "[W]hat constitutes reasonable diligence will depend on the facts and circumstances of each particular case." Id.

**{¶27}** The trial court, in its decision, found that "damage to the addition occurred at least as early as the summer of 2001, which is the time [appellants] discovered, or should have discovered, that a problem existed regarding the construction of the

addition" and that, therefore, appellants' negligence claim occurred "well over four years before the date they filed their complaint in this case on October 31, 2008." We agree.

{¶28} As is stated above, appellant Diane Coughlin testified that the roof started leaking right after her daughter was born in March of 2001. She testified that the project was completed January or February of 2001 and that the roof started "leaking probably that summer." Deposition of Diane Coughlin at 33. While she was unable to specify specific dates when the leaking occurred, she testified that the leaking occurred soon after the project was completed. During her deposition, she further testified that there was a leak where the bridge met the stone wall in the summer of 2001 and that the leak was "[f]airly bad. You could see pretty substantial stains running down the wall, so maybe six inches wide, the length of the wall." Deposition of Diana Coughlin at 35. She further testified that, in her mind, the leaks indicated that the work was not done properly and that the leaking was a continual problem. She testified that she "equate[d] it to the show, Green Acres, They had pots and pans under the---." Deposition of Diana Coughlin at 39.

{¶29} During her deposition, appellant Diana Coughlin further testified that the leaking was a continual problem, from roughly the summer of 2001 until appellants hired Ralph Fallen Builders to repair the problems in late 2006 or early 2007. When questioned about the numerous leaks, she testified that "they were all very similar chronologically" and that they occurred within the first year. Deposition of Diana Coughlin at 50. Appellant Diana Coughlin further testified that she did not care why the leaking was occurring, but just wanted the problems fixed.

{¶30} Appellants, in their brief, contend that appellee told them that their house was "unique and complicated, and that they could expect ongoing substantial and complex maintenance issues." According to appellants, based upon appellee's advice, they expected to have to perform a lot of maintenance and upkeep on their home and "did not view the leaks and other such issues as indicating defective work but as maintenance issues that could easily and routinely be fixed." On such basis, appellants maintain that there is a genuine issue of material fact as to when they should have discovered their claim against appellee.

{¶31} However, as is stated above, appellant Diana Coughlin testified that in her mind, the leaks indicated that the work was not done properly. Furthermore, the leaks to appellants' property were numerous, continual and substantial, causing significant damage. Testimony was adduced during Diana Coughlin's deposition that the leaking caused skylight panels to leak and crack and that water ran down windows onto the floor causing damage to the underlying flooring. During her deposition, she further testified that, due to the leaking, appellants' replaced cracked skylights where the leaking occurred and replaced flooring that had cracked. She further testified that, as a result of the leaking, mold was growing and that the glass in the skylights above the shower leaked before they shattered. According to appellant Diana Coughlin, as a result of leaking near the fiber optic lighting, drywall started falling. Testimony also was adduced during appellant John Coughlin's deposition that the leak along the stone wall ruined the carpeting, the bed headboard and caused the floor to buckle. Clearly, these problems did not, as appellants contend, indicate maintenance issues that could easily and routinely be fixed. We concur with the trial court that appellants, at least as early as

the summer of 2001, discovered or should have discovered that problems existed regarding construction of the master bedroom addition.

{¶32} Based on the foregoing, we find that the trial court did not err in holding that appellants' cause of action for negligence accrued as early as the summer of 2001 and in holding that appellants' negligence claim against appellee, which occurred more than four years before they filed their complaint against appellee in October 31, 2008, was time barred under R.C. 2305.09.

{¶33} Appellants' first assignment of error is, therefore, overruled.

II

{¶34} Appellants, in their second assignment of error, argue that the trial court erred in granting summary judgment to appellee on their breach of contract claim. We disagree.

{¶35} The parties in the case sub judice agree that appellants' claim that appellee breached the parties' oral contract is governed by R.C. 2305.07. Such section states as follows: "Except as provided in sections 126.301 and 1302.98 of the Revised Code, an action upon a contract not in writing, express or implied, or upon a liability created by statute other than a forfeiture or penalty, shall be brought within six years after the cause thereof accrued."

{¶36} However, the parties disagree as to when appellants' cause of action accrued. Appellants maintain that appellee was still performing its contract as late as January of 2003. In their surreply memorandum contra appellee's Motion for Summary Judgment, appellants attached appellant John Coughlin's affidavit. Appellant John Coughlin, in his affidavit, stated that appellants had one contract with appellee on the

project at issue in the case sub judice, and that all bills that they received from appellee were based on the one contract for the one project. Appellants, in their brief, note that attached to appellant John Coughlin's affidavit was an invoice dated January 17, 2003, from appellee to appellant for architectural services from November 1, 2002, through January 3, 2003. Appellants argue that their complaint was timely filed because it was filed on October 31, 2008, which is within six years of January 17, 2003. They argue that they could not file a breach of contract action against appellee until appellee had completed all of the work under the contract, which they contend occurred as late as January of 2003.

{¶37} In turn, appellee contends that its performance on the master bedroom addition was completed in 2001, and that, at the time work on such project was completed in early June of 2001, the parties did not have any agreement with respect to appellee providing interior design services for the remainder of appellants' home. Appellee maintains that, beginning in March of 2002, appellants again retained appellee "to provide interior design services with respect to redecorating and selecting furnishings for other portions of [appellants'] home." In short, appellee maintains that there were two separate contracts for two separate projects, one for the master bedroom addition and the other for an interior decorating project, and that the work on the master bedroom addition was completed in 2001. Because appellants did not file their breach of contract action until more than six years after such date, appellee maintains that the same is time-barred.

{¶38} A breach occurs upon any failure to perform a contractual duty. *Kotyk v. Rebovich* (1993), 87 Ohio App.3d 116, 121, 621 N.E.2d 897. A cause of action for

breach on the contract accrues when the plaintiff discovers the omission to perform as agreed. Id at 121, citing *Cleveland Bd. of Edn. v. Lesko* (Apr. 12, 1990), Cuyahoga App. No. 56592, 1990 WL 43640, unreported. See also *Aluminum Line Products Co. v. Brad Smith Roofing Co., Inc.* (1996), 109 Ohio App.3d 246, 671 N.E.2d 1343.

**{¶39}** Appellants, in their brief, rely on *O'Bryon v. Poff*, Wayne App. No. 02CA0061, 2003-Ohio-3405 for the proposition that a claim for failure to perform a contract cannot begin to run until the time for performance of the contract ends. On the basis of such case, appellants argue that no breach in this case could have occurred until the project was completed as late as January of 2003.

**{¶40}** However, we find such case distinguishable. In *O'Bryon,* the appellee had an oral agreement to lease her land to the appellant for farming use during the years 1994 and 1995. The appellee alleged that she agreed to lease the land to the appellant in exchange for replacing an underground drain on her property and that the appellant failed to do so. It was undisputed that the appellant did not perform work on the drain line.

**{¶41}** The appellee, in *O'Bryon,* then filed a complaint against the appellant on August 31, 2001, seeking to enforce the oral agreement. The appellant alleged that the same was barred by the six year statute of limitations contained in R.C. 2305.07 for oral contracts. In *O'Bryon* the court held, in relevant part as follows: "A breach occurs upon any failure to perform a contractual duty. Thus, the cause of action arises when the plaintiff discovers the omission to perform as agreed in the oral contract." [Citations omitted.] *Harris v. Oliver* (Nov. 28, 2001), 9th Dist. No. 20508, citing *Kotyk v. Rebovich* (1993), 87 Ohio App.3d 116, 121, 621 N.E.2d 897.

**{¶42}** "There is no testimony in the record regarding when Mr. Poff was to have completed work on the drainage line, or, alternatively, when the monetary payment for the rental of the property was due. The trial court found that the cause of action for the lease accrued on September 29, 1995, apparently using the date of the invoice created by Ms. O'Bryon. Because there was no set date by which time Mr. Poff had to complete the drainage line, the breach did not occur until the end of the lease. The lease ended in 1995, therefore the breach occurred in 1995. Ms. O'Bryon filed her complaint in 2001, within the six year statute of limitations." Id at 34-35.

**{¶43}** Unlike in *O'Bryon*, in the case sub judice, the work on the master bedroom addition was actually completed. According to appellant Diana Coughlin's testimony, the work was completed in 2001. According to her testimony, the leaks appeared shortly thereafter and were substantial and continual causing significant structural problems. At such time, appellants discovered appellee's alleged failure to perform as agreed in the parties' oral contract. We concur with the trial court that appellants' breach of contract claim occurred over six years before they filed their complaint on October 31, 2008 and that, therefore, appellants' breach of contract claim is time-barred under R.C. 2305.07.

{¶44}  Appellants' second assignment of error is, therefore, overruled.

{¶45}  Accordingly, the judgment of the Delaware County Court of Common Pleas is affirmed.

By: Edwards, J.

Wise, P.J. and

Delaney, J. concur

_____

_____

_____

JUDGES

JAE/d0505

[Cite as *Coughlin v. Acock Assoc. Architects, L.L.C.* , 2011-Ohio-3212.]

IN THE COURT OF APPEALS FOR DELAWARE COUNTY, OHIO

FIFTH APPELLATE DISTRICT

JOHN COUGHLIN, et al.,            :

:

          Plaintiffs-Appellants     :

:

:

-vs-                         :         JUDGMENT ENTRY

:

ACOCK ASSOCIATES ARCHITECTS,  :

LLC, et al.,                :

:

          Defendants-Appellees   :         CASE NO. 10CAE060044

For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Delaware County Court of Common Pleas is affirmed. Costs assessed to appellants.

                                  _____

                                  _____

                                  _____

                                          JUDGES