RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 09a0064p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

————————————

DOROTHY HENSLEY, et al.,
                    *Plaintiffs-Appellants,*

                                                                    No. 07-4343

            *v.*

CITY OF COLUMBUS, et al.,
                    *Defendants-Appellees.*

Appeal from the United States District Court
for the Southern District of Ohio at Columbus.
No. 99-00888—George C. Smith, District Judge.

Argued: December 10, 2008

Decided and Filed: February 23, 2009

Before: KENNEDY, MARTIN, and MOORE, Circuit Judges.

————————————

**COUNSEL**

**ARGUED:** Steve J. Edwards, Grove City, Ohio, for Appellants. Daniel W. Drake, COLUMBUS CITY ATTORNEY'S OFFICE, Columbus, Ohio, for Appellees. **ON BRIEF:** Steve J. Edwards, Grove City, Ohio, for Appellants. Daniel W. Drake, Jennifer S. Gams, COLUMBUS CITY ATTORNEY'S OFFICE, Columbus, Ohio, Kevin P. Foley, REMINGER CO., Columbus, Ohio, Carl A. Anthony, FREUND, FREEZE & ARNOLD, Columbus, Ohio, Kenneth E. Harris, HARRIS, TURANO & MAZZA, Columbus, Ohio, for Appellees.

————————————

**OPINION**

————————————

BOYCE F. MARTIN, JR., Circuit Judge. Plaintiffs appeal the dismissal of their federal takings claim against the City of Columbus. They alleged that the City unconstitutionally deprived them of their well-water by digging a trench to extend a sewer pipeline. The district court dismissed their claim as barred by the statute of limitations.

1

Because it ripened around 1992—then beginning the two-year statute of limitations period—we affirm.

### I.

In 1990, the City of Columbus decided to extend a sewer line. To do so, the defendants (the City along with several private entities), created a dry trench by pumping groundwater out from the plaintiffs' property to clear the way. For purposes of this proceeding, the defendants have stipulated that this "dewatering" activity caused the plaintiffs' wells to run dry. Before filing this federal action, in 1992 the plaintiffs filed a complaint in state court alleging that the defendants committed a state tort, the unreasonable use of their groundwater. After some machinations and various appeals, the state courts ultimately rejected this claim. Keeping hope alive, they filed this suit in federal court in 1999, alleging a federal takings claim and a procedural and substantive due process claim under 42 U.S.C. § 1983. The district court first concluded that Ohio does not recognize a property interest in groundwater—so there was nothing for the state to take—and granted summary judgment to the defendants. This Court on appeal certified to the Supreme Court of Ohio the question whether "an Ohio homeowner [has] a property interest in so much of the groundwater located beneath the land owner's property as is necessary to the use and enjoyment of the owner's home." The Supreme Court of Ohio answered in the affirmative. *McNamara v. City of Rittman*, 838 N.E.2d 640, 646 (Ohio 2005).

So we reversed the district court's original decision and remanded for reconsideration. After additional briefing and argument, it again dismissed the plaintiffs' takings claim, this time as barred by the statute of limitations. The plaintiffs now appeal.

### II.

"The Fifth Amendment does not proscribe the taking of property; it proscribes taking without just compensation." *Williamson County Reg'l Planning Comm'n v. Hamilton Bank*, 473 U.S. 172, 194 (1985). Thus, even after a taking, the government has not violated the Constitution until it refuses to compensate the owner. *Id.* at 194-95 & n.13. A federal court may therefore hear a takings claim only after two criteria are met: (1) the plaintiff must demonstrate that he or she received a "final decision" from the relevant government, *id.* at

186-87; and (2) the plaintiff must have sought "compensation through the procedures the State has provided for doing so," *id.* at 194.[1] These two requisites mimic the Fifth Amendment's text.

This first hurdle requires that the taking be "final." With a "physical taking," the taking itself is viewed as a final action because, once the property's value has been allegedly destroyed, there is nothing else to do. *See Coles v. Granville*, 448 F.3d 853, 862 (6th Cir. 2006). And with a "regulatory taking," the finality "requirement follows from the principle that only a regulation that 'goes too far' results in a taking." *Suitum v. Tahoe Reg'l Planning Agency*, 520 U.S. 725, 734 (1997) (quoting *Penn. Coal Co. v. Mahon*, 260 U.S. 393, 415 (1922)). For the second requirement, "if a State provides an adequate procedure for seeking just compensation, the property owner cannot claim a violation . . . until it has used the procedure and been denied just compensation." *Suitum*, 520 U.S. at 734 (quoting *Williamson*, 473 U.S. at 195) (observing that this "stems from the Fifth Amendment's proviso that only takings without just compensation infringe that Amendment").[2]

## A.

We are faced with an accrual question: when did the plaintiffs' takings claim ripen? The answer tells us when the statute of limitations began to run.[3] Typically, federal takings claims may not be heard in federal court until the plaintiffs have first pursued just compensation using the procedures the state has provided, usually via "inverse condemnation" proceeding. *See, e.g., Braun v. Ann Arbor Charter Twp.*, 519 F.3d 564, 570-71 (6th Cir. 2008). But this claim arises out of Ohio, and Ohio has not

---

[1] "[T]he procedural [and substantive] due process claim[s] in this case [are] not independent of the underlying takings claim, [so] ripeness analysis for the takings claims necessarily subsumes ripeness analysis for the due process claim[s]." *McNamara v. City of Rittman*, 473 F.3d 633, 639 n.2 (6th Cir. 2007).

[2] Because the distinction between "regulatory" and "physical takings" is "fuzzy at best," this Court has held that "it is wholly immaterial whether the alleged taking is styled as "physical" or "regulatory" in the context of the just compensation requirement. *River City Capital, L.P. v. Bd. of County Comm'rs*, 491 F.3d 301, 307 (6th Cir. 2007).

[3] "This court reviews de novo a district court's holding that a legal claim is barred by the applicable statute of limitations period." *McNamara*, 473 F.3d at 636.

always had a constitutionally "reasonable, certain, and adequate" procedure. *See McNamara v. City of Rittman*, 473 F.3d 633, 638 (6th Cir. 2007) (quoting *Williamson*, 473 U.S. at 194). This Court lengthily recounted this unique history in *Coles* and the upshot is that, *at least* until the Ohio Supreme Court decided *Levin v. City of Sheffield Lake*, 637 N.E.2d 319, 323-34 (Ohio 1994), Ohio had no just compensation procedures whatsoever, though now it does. *Coles*, 448 F.3d at 864. Because Ohio did not have adequate procedures at least until 1994, any takings victims had no procedure to avail themselves of, so all takings claims that became final in Ohio before then became ripe immediately, thus triggering the statute of limitations. *See McNamara*, 473 F.3d at 639.

Here, both parties agree that the applicable statute of limitations is only two years, Ohio Rev. Code § 2305.10, and that it "starts to run when the plaintiff knows or has reason to know of the injury which is the basis of the action." *McNamara*, 473 F.3d at 639. So when did the plaintiffs have reason to know of their injury? The district court concluded that, as a factual matter, the plaintiffs had reason to know the basis of their injuries before 1994 for two main reasons. First, most of the plaintiffs were parties to a 1992 state suit arising out of these same facts, so we can fairly say most plaintiffs knew by then. Second, "based on evidence submitted by defendants, and not disputed by plaintiffs, all of the plaintiffs, including those that did not file suit until 1995 or later, knew or had reason to know of their injury by the end of 1991." *Hensley v. City of Columbus*, 2007 U.S. Dist. LEXIS 73178, at *13 (S.D. Ohio Oct. 1, 2007). Because plaintiffs present us with no evidence that this conclusion was clearly erroneous, we must accept it, and thus their claims ripened at the latest by 1991 or 1992, so the two-year statute of limitations has run out.

### B.

Plaintiffs also assert that, notwithstanding that their claim would ordinarily have expired by now, they nevertheless benefit from the "continuous violation" doctrine so their claim is still live. This doctrine is rooted in general principles of common law and is independent of any specific action. *See, e.g., Heard v. Sheahan*, 253 F.3d 316, 318 (7th Cir. 2001). And in this Circuit, a "continuous violation" exists if: (1) the defendants

engage in continuing wrongful conduct; (2) injury to the plaintiffs accrues continuously; and (3) had the defendants at any time ceased their wrongful conduct, further injury would have been avoided. *Kuhnle Bros., Inc. v. County of Geauga*, 103 F.3d 516, 521 (6th Cir. 1997) (citations omitted); *see also McNamara,* 473 F.3d at 639 ("'[A] law that works an ongoing violation of constitutional rights does not become immunized from legal challenge for all time merely because no one challenges it within two years.'") (quoting *Kuhnle*, 103 F.3d at 522).

Unlike in *McNamara*, however, the plaintiffs here do not suffer from a "continuous violation." In that case, the City drilled multiple wells near the plaintiffs' property, and operating those wells provided the City with between 500,000 and 750,000 gallons of water per day. *Id.* at 635. The *McNamara* plaintiffs claimed that both the initial drilling *and* the continual operation of the wells lowered their aquifers such that, were operations to stop, their aquifer would replenish. *Id.* This Court dismissed the claims related to the initial drilling as barred by the statute of limitations, but dismissed the claims related to the continuous operation and pumping of the wells as unripe because, while that constituted a continuous violation, the plaintiffs had not availed themselves of Ohio's mandamus procedure. *Id.* at 639-40. Here, by contrast, while the City of Columbus built a dry trench by pumping out groundwater to extend a local sewer line, the water level of their wells does not depend on any continual intervention by the state: once the trench was constructed in 1992, the cessation of activity would have done nothing for the defendants. In other words, the damage was done, and, unlike the *McNamara* plaintiffs, no ongoing state activity gave rise to a continuous violation that would justify resetting the statute of limitations clock. Thus, the plaintiffs' claim ripened in 1992 and is now barred by the statute of limitations.[4]

---

[4]We also note that, contrary to the plaintiffs assertions, there is no confusion in this Circuit regarding the continued application of *Williamson County*'s requirements, *see Braun*, 519 F.3d at 570, and, for a variety of reasons, some property owners who go through an entire state proceeding might not be able to maintain a federal suit, *see, e.g., San Remo Hotel, L.P. v. City and County of San Francisco*, 545 U.S. 323, 347 (2005) *Trafalgar Corp. v. Miami County Bd. of Comm'rs*, 519 F.3d 285, 288 (6th Cir. 2008); *Rockstead v. City of Crystal Lake*, 486 F.3d 963, 968 (7th Cir. 2001) ("The failure to complain of the taking [in state court] under federal as well as state law is a case of 'splitting' a claim, thus barring by virtue of the doctrine of res judicata a subsequent suit under federal law.").

III.

For the above reasons, we AFFIRM the judgment of the district court.