[Cite as *Ohio Edison Co. v. Wilkes*, 2012-Ohio-2718.]

STATE OF OHIO, MAHONING COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| OHIO EDISON COMPANY, | ) | CASE NO. 10 MA 174 |
| | ) | |
| PLAINTIFF-APPELLEE, | ) | |
| | ) | |
| VS. | ) | O P I N I O N |
| | ) | |
| THOMAS WILKES, et al., | ) | |
| | ) | |
| DEFENDANTS-APPELLANTS. | ) | |

CHARACTER OF PROCEEDINGS:         Civil Appeal from Common Pleas Court,
                                  Case No. 09CV1280.


JUDGMENT:                         Affirmed.


APPEARANCES:
For Plaintiff-Appellee:           Attorney Stephen Funk
                                  222 South Main Street
                                  Akron, Ohio  44308


For Defendants-Appellants:        Attorney Brett Mancino
                                  1360 East Ninth Street
                                  1000 IMG Center
                                  Cleveland, Ohio  44114


JUDGES:
Hon. Joseph J. Vukovich
Hon. Gene Donofrio
Hon. Mary DeGenaro


                                  Dated: June 13, 2012

[Cite as *Ohio Edison Co. v. Wilkes*, 2012-Ohio-2718.]
VUKOVICH, J.

{¶1} Defendants-appellants Thomas and Derrell Wilkes appeal the decision of the Mahoning County Common Pleas Court, which entered judgment in favor of plaintiff-appellee Ohio Edison and ordered appellants to move their aboveground pool and shed to a location that is more than fifty feet from the center line of Ohio Edison's electric transmission line that runs through an easement. Appellants initially argue that PUCO has exclusive jurisdiction over the issue. The substantive issue raised by appellants is whether the court properly interpreted the word "obstruction" in the easement. They also contend that the statute of limitations has run and that Ohio Edison's action should be barred by laches, waiver, and estoppel.

{¶2} As to the jurisdictional issue, we cannot rule that PUCO rather than the trial court had jurisdiction because: PUCO already declined jurisdiction in this case; we have no power to review their decision; and, the Supreme Court has affirmed PUCO's denial of jurisdiction. Regarding the substance of the main issue, we conclude that the trial court properly construed the word obstruction to include structures within the easement and within the arcing zone. Finally, the statute of limitations has not run, and the action is not barred by other equitable doctrines due to the continuing nature of the danger posed by arcing and the utility's continuing inability to run the lines at full power. Accordingly, the judgment of the trial court is affirmed.

## STATEMENT OF THE CASE

{¶3} In 1949, an owner of acreage in Boardman granted an easement to Ohio Edison for the construction and maintenance of high voltage electrical transmission lines. The easement gives Ohio Edison the right to keep the right-of-way clear of all trees, bushes, and other "obstructions" within fifty feet of the center line. In 1977, years after the lines were erected, the Wilkes purchased their lot at 8230 Gardenwood Place. In 1993, the Wilkes erected a shed and an above-ground pool on their lot.

{¶4} In 2008, Ohio Edison informed the Wilkes that the National Electrical Safety Code (NESC) provides that their pool and shed are too close to the lines,

causing a danger of arcing. The Wilkes were provided time to move the structures further from the line, but they eventually refused to do so.

{¶5} On April 8, 2009, Ohio Edison filed a complaint in the Mahoning County Common Pleas Court asking for injunctive and declaratory relief. Ohio Edison relied on the express easement, and in the alternative, implied and prescriptive easements. They also alleged nuisance.

{¶6} The Wilkes responded in part by arguing that Ohio Edison is not bound by the NESC and stating that Ohio Edison gave them permission to construct the structures in 1993. They also filed counterclaims for trespass, nuisance, and intentional infliction of emotional distress.

{¶7} The Wilkes filed a motion to dismiss arguing that the Public Utilities Commission of Ohio (PUCO) had exclusive jurisdiction and noting that they had filed a complaint with PUCO to determine if the location of the pool and shed constituted safety hazards. Motions for summary judgment were filed by both parties as well.

{¶8} On August 16, 2010, the magistrate issued a decision granting Ohio Edison's motion for summary judgment; findings and conclusions were issued on September 14, 2010. The magistrate found that the pool and shed are located within Ohio Edison's right of way. NESC minimum clearance for the pool is 25.7 feet, but the pool is only 20.7 feet from the conductors. Minimum clearance for the shed is 13.2 feet, but the shed is only 10 feet from the lines. The magistrate found that the location of these structures poses a continuing nuisance that interferes with Ohio Edison's right to operate the lines in a safe and reliable manner.

{¶9} The magistrate stated that Ohio Edison was entitled to an injunction to enforce its rights under the easement. The magistrate alternatively stated that if there is no express easement, then there is an implied easement to operate the lines and to take any actions necessary for safe and reliable operations. Also alternatively, the magistrate held that Ohio Edison would have a prescriptive easement to operate and maintain the lines due to its open, notorious, adverse, and continuous use for more than 21 years. The magistrate held that the court had jurisdiction to enforce the easement and ordered the Wilkes to move the shed and pool.

{¶10} The Wilkes objected to the magistrate's decision. On October 21, 2010, the trial court overruled the objections and adopted the magistrate's decision. The court ordered the Wilkes to move the shed and pool out of the right of way within 120 days. The Wilkes [hereinafter appellants] filed a timely notice of appeal.

ASSIGNMENT OF ERROR NUMBER ONE

{¶11} Appellants set forth eight assignments of error, the first of which provides:

{¶12} "THE TRIAL COURT ERRED IN OVERRULING THE APPELLANTS' MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION PURSUANT TO *CORRIGAN V. ILLUMINATING COMPANY* (2009), 122 OHIO ST.3d 265, 910 N.E.2d 1009."

{¶13} Regardless of whether we believe PUCO had jurisdiction, there is an obstacle to our making such a holding. On February 23, 2011, PUCO ruled that it did not have jurisdiction over the complaint, distinguishing vegetation management from removal of structures, claiming that they had no expertise in the matter, and stating that the matter can be resolved by a court's application of the terms of the easement.

{¶14} PUCO is allowed in the first instance to determine its own jurisdiction. *In re Complaint of Residents of Struthers, Ohio*, 45 Ohio St.3d 227, 231, 543 N.E.2d 794 (1989); *State ex rel. Cleveland Elec. Illuminating Co. v. PUC*, 173 Ohio St. 450, 452, 183 N.E.2d 782 (1962). *See also* 78 Ohio Jurisprudence 3d, Public Utilities, Section 27. And, it is only the Ohio Supreme Court that can determine whether PUCO made a proper decision declining to exercise jurisdiction over the issue of structures causing an unsafe line conditions. R.C. 4903.13. A court of appeals must accept PUCO's determinations, or that appellate court would be improperly exercising revisory jurisdiction over PUCO. *Northern Ohio Tel. Co. v. Putnam*, 164 Ohio St. 238, 246, 130 N.E.2d 91 (1955).

{¶15} Moreover, appellants appealed PUCO's jurisdictional decision to the Ohio Supreme Court, where Ohio Edison was allowed to intervene. We thus held this appeal in abeyance pending the Supreme Court's ruling on the issue of whether PUCO had exclusive jurisdiction in this case. The Supreme Court has now affirmed

PUCO's decision. *In re Complaint of Wilkes v. Ohio Edison Co.,* 131 Ohio St.3d 252, 2012-Ohio-609, 963 N.E.2d 1285. In ruling on jurisdiction, the Court found that appellants failed to show that PUCO's expertise was required to resolve this dispute, mostly because they apparently failed to cite the Court to any page within the NESC or explain to that Court how it applies. *Id.* at ¶ 10. Thus, the Supreme Court has already ruled on the issue of PUCO's jurisdiction on this dispute between these parties.

**{¶16}** As we cannot force PUCO to take jurisdiction and we cannot make a ruling in contradiction of the Ohio Supreme Court's affirmance of PUCO's decision to decline jurisdiction in this very case, the question of whether the trial court should have left the issue with PUCO has essentially become moot for our purposes or otherwise unreviewable. *See State v. Black*, 7th Dist. No. 09CO5, 2010-Ohio-2201, ¶ 12 (the question of whether an appellate issue has become moot can be proven by extrinsic evidence outside the record), citing *Pewitt v. Lorain Correctional Inst.*, 64 Ohio St.3d 470, 472, 597 N.E.2d 92 (1992). *See also Hagerman v. City of Dayton*, 147 Ohio St. 313, 71 N.E.2d 246 (1947); *Ussher v. Ussher*, 2d Dist. No. 2009-Ohio-49, 2011-Ohio-1440, fn.3. That is, an event has occurred during the course of this appeal which basically renders it impossible for this court to grant the relief requested. *See Miner v. Witt*, 82 Ohio St. 237, 92 N.E. 21 (1910). Consequently, this assignment of error is overruled.

<u>ASSIGNMENT OF ERROR NUMBER TWO</u>

**{¶17}** Appellants' second assignment of error provides:

**{¶18}** "THE TRIAL COURT ERRED TO THE PREJUDICE OF THE APPELLANTS WHEN IT RULED THAT THE EXPRESS EASEMENT IN THIS CASE GRANTED OHIO EDISON BROADER RIGHTS THAN THE EASEMENT GRANTED THEM IN CONSTRUING THE WORD 'OBSTRUCTION'."

**{¶19}** Appellants urge that Ohio Edison's attempt to inject the NESC into the easement is improper. This assignment of error is based upon appellants' belief that the word "obstruction" in the easement clearly and unambiguously means something that blocks or clogs the passage or cuts off sight, citing *Howard v. Miami Twp. Fire*

*Div.*, 119 Ohio St.3d 1, 2008-Ohio-2792, 891 N.E.2d 311. Appellants contend that the shed and pool are not obstructions because they do not block the passage of the lines or the linemen who come to service the lines.

**{¶20}** In the *Howard* case they rely upon, the Supreme Court analyzed an immunity statute in order to determine whether there was government liability for ice on roads. The Court stated that dictionary definitions of the word obstruction include not just blocking or cutting off sight but also includes merely "hindering and impeding-concepts that do not necessarily require a complete blockage." *Id.* at ¶ 21-22. The Court found an ambiguity and resolved it by looking at the legislative history. *Id.* at ¶ 20, 23, 25 (amending the statutory language, "free from nuisance," to the language, "other negligent failure to remove obstructions," was a deliberate attempt to narrow government liability for road conditions). Thus, "for purposes of R.C. 2744.02(B)(3), an 'obstruction' must be an obstacle that blocks or clogs the roadway and not merely a thing or condition that hinders or impedes the use of the roadway or that may have the potential to do so. *Id.* at ¶ 30.

**{¶21}** Contrary to appellants' argument here, the word "obstruction" does not unambiguously require a total blockage even under the *Howard* case as the *Howard* Court found an ambiguity. Plus, as Ohio Edison points out, the *Howard* Court specifically limited its holding to the immunity statute. Moreover, its analysis resorted to legislative history to determine how to resolve the ambiguity and turned upon the fact that the statute had been amended from nuisance to obstruction. As such, the end result of that case is not dispositive here. We thus turn to the basic principles regarding easements.

**{¶22}** "The owner of land that is subject to an easement has the right to use the land in any manner not inconsistent with the easement. However that owner has no right to interfere with the reasonable and proper use of the easement or obstruct or interfere with the use of the easement." *Bayersdorfer v. Winkler*, 7th Dist. Nos. 860, 871, 2003-Ohio-3296, ¶20 (servient landowner's livestock crossing easement interfered with easement holder's right, allowing trial court to order landowner to construct fence to keep livestock off easement).

**{¶23}** Thus, besides Ohio Edison's express right in the easement to remove obstructions within fifty feet of the center line, the law provides that appellants cannot interfere with the reasonable and proper use of Ohio Edison's right of way or obstruct or interfere with Ohio Edison's use of the right of way. There was undisputed proof that Ohio Edison's use of the right of way is negatively affected by the structures because they cannot knowingly run 69kV transmissions through the line without violating duties under the law and duties to individuals.

**{¶24}** Furthermore, contrary to another argument set forth by appellants, Ohio Edison was not enforcing the NESC against them as part of some unstated contractual right. Rather, the NESC was used to show why Ohio Edison was enforcing its easement rights and what standards the utility must abide by in order to safely operate its lines. It was proof of why an object, whether it be a tree or a pool, can cause a dangerous situation if it is located too close to the lines. It helped show their reasoning behind categorizing certain close structures as obstructions. The NESC provided evidence that the existence of structures interfered with Ohio Edison's reasonable and proper use of the lines (the purpose of the right of way).

**{¶25}** "When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the party's pleadings, but the party's response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the party does not so respond, summary judgment, if appropriate, shall be entered against the party." Civ.R. 56(E).

**{¶26}** Appellants did not meet their reciprocal burden by providing proper evidence to dispute the evidence placed in the record by Ohio Edison on these safety matters. *See Todd Dev. Co., Inc. v. Morgan*, 116 Ohio St.3d 461, 2008-Ohio-87, 880 N.E.2d 88, ¶ 12. *See also* Defendant's Response to Summary Judgment at 3-9. Rather, their response to this topic below and reiterated here is that the word obstruction clearly does not mean their pool and shed.

**{¶27}** Other related complaints were for instance that no arcing has occurred in the past and that no lineman ever mentioned the risk of arcing in the past.

However, this does not mean that the closeness of the structures does not pose a danger; nor does it mean that Ohio Edison's calculations on distance per unit were inaccurate; nor does it mean that Ohio Edison can run 69kV transmissions through the line. It could be surmised that an obstruction exists due to the mere fact that the NESC disallows 69kV transmission where structures have been erected that close to the line, especially where the structures are merely a shed and an aboveground pool.

**{¶28}** Appellants also claimed that the standards were not binding on Ohio Edison. However, the NESC is not an optional consideration. *Corrigan v. Illuminating Co.*, 122 Ohio St.3d 265, 2009-Ohio-2524, 910 N.E.2d 1009, ¶ 15 (electric utilities are required to comply with the American National Standard Institute's National Electrical Safety Code), citing Ohio Adm. Code 4901:1-10-06. *See also Otte v. Dayton Power & Light Co.*, 37 Ohio St.3d 33, 39, 523 N.E.2d 835 (1988) (NESC provides standard of care for utility).

**{¶29}** Contrary to appellants' argument here, the utility easement's language allowing the removal of trees, bushes, and other obstructions is not so narrow that it unambiguously allows a shed and aboveground pool to be maintained in an electric right of way so close to power lines that it creates a risk of arcing under the NESC. Because appellants failed to offer evidence to dispute the evidence presented by Ohio Edison on safety, appellants failed to establish the existence of a genuine issue of material fact on whether there is a risk to the lines and to people due to the closeness of the structures to the lines. Accordingly, this assignment of error is overruled.

ASSIGNMENT OF ERROR NUMBER THREE

**{¶30}** Appellants' third assignment of error alleges:

**{¶31}** "THE TRIAL COURT ERRED TO THE PREJUDICE OF THE APPELLANTS WHEN THE TRIAL COURT RULED IN THE ALTERNATIVE THAT OHIO EDISON HAD A PRESCRIPTIVE EASEMENT AND AN IMPLIED EASEMENT WHICH GRANTED RIGHT TO THEM WELL BEYOND THAT WHICH THE LAW RECOGNIZES."

**{¶32}** Ohio Edison had argued implied or prescriptive easement in the alternative to an express easement because appellants had previously argued that the easement does not refer to their property. The magistrate found that there was an express easement. In the alternative, the magistrate held that to the extent there is no express easement, then there is an implied easement and, alternative to that, to the extent there is no implied easement, there is an easement by prescription.

**{¶33}** Appellants objected on the grounds that since the magistrate held there is an express easement, he should not have found that there was also an implied or a prescriptive easement, urging that an easement may not simultaneously be created by express grant and by implication. *See, e.g., Tiller v. Hinton*, 19 Ohio St.3d 66, 60, 482 N.E.2d 946 (1985) (three justices). Appellants briefly repeat this argument on appeal.

**{¶34}** However, the magistrate was not holding that there was an express, an implied, and a prescriptive easement. Nor was the magistrate finding an implied or prescriptive easement in order to broaden the terms of the express easement. Rather, the magistrate was simply making alternative holdings to address every claim made by appellants; these were assuming arguendo statements. In fact, the trial court's decision affirming the magistrate's decision did not reiterate these statements.

**{¶35}** Also notable is the fact that appellants no longer argue that the express easement does not refer to their lot; thus, Ohio Edison's prior alternative claims of implied or prescriptive easement need not be addressed. Finally, since the prior assignment of error dealing with the express easement has been overruled, this assignment of error is moot as well and is without merit.

ASSIGNMENT OF ERROR NUMBER FOUR

**{¶36}** Appellants' fourth assignment of error states:

**{¶37}** "THE TRIAL COURT ERRED TO THE PREJUDICE OF THE APPELLANTS WHEN IT RULED THAT THE LOCATION OF THE SWIMMING POOL AND STORAGE SHED ARE NUISANCES BECAUSE THERE HAS NEVER BEEN AN INJURY, AND SUCH CAUSE OF ACTION DOES NOT EXIST OUTSIDE THE EXPRESS EASEMENT."

**{¶38}** Appellant makes two brief arguments here: (1) Ohio Edison has no standing because the risk of harm is insufficient to confer standing; and (2) where there is an easement governing a relationship, the court cannot act under other doctrines such as nuisance.

**{¶39}** Nuisance is defined as "the wrongful invasion of a legal right or interest encompassing the use and enjoyment of property and personal rights and privileges. *Taylor v. Cincinnati*, 143 Ohio St. 426, 432, 55 N.E.2d 724 (1944). A qualified nuisance is the negligent maintenance of a condition that creates an unreasonable risk of harm. *State ex rel. R.T.G., Inc. v. State*, 98 Ohio St.3d 1, 2002-Ohio-6716, 780 N.E.2d 998, ¶ 59.

**{¶40}** Since a past physical injury is not required, appellant's first argument is without merit. As Ohio Edison points out, they need not wait until a physical personal injury or an electrical failure occurs before seeking to remove the object in danger of arcing. In any event, Ohio Edison was actually injured by the fact that they cannot run more power through the lines due to this interference with their property rights.

**{¶41}** As to the second argument, those with rights in property can sue for nuisance even if they have no contract with the potential defendant creating the nuisance. Appellants believe this right is extinguished if a contract does exist. Yet, appellants cite no law to establish their claim that when a plaintiff contracts for an easement over another's land, his right to sue a person who creates a nuisance toward his property rights is erased. That is, they cite no law for the proposition that an easement holder cannot also sue the servient landowner for nuisance.

**{¶42}** Thus, they have failed to support this assignment of error properly. *See* App.R. 16(A)(7) (a party must support each of its assignments of error with an argument containing the contentions of the appellant and the reasons in support of the contentions, with citations to the authorities, statutes, and parts of the record on which appellant relies). App.R. 12(A)(2) (court can disregard an assignment of error if the party fails to argue as App.R. 16(A) requires); *Wells Fargo, N.A. v. Jarvis*, 7th Dist. No. 08CO30, 2009-Ohio-3055, ¶31-33, citing *Hawley v. Ritley* (1988), 35 Ohio St.3d 157, 159, 519 N.E.2d 390 ("lack of briefing" here allows us to disregard

assignment of error); *State v. Tri-State Group, Inc.*, 7th Dist. No. 03BE61, 2004-Ohio-4441, ¶ 24-25.

**{¶43}** Regardless, nuisance was an alternative holding duplicative of the express easement holding. Notably, Ohio Edison did not seek damages for nuisance; they merely sought to declare their right to abate the nuisance (as permitted by the easement) in order to avoid a safety hazard. This same declaration was sought under the express easement cause of action. Due to our resolution of the second assignment of error concerning the express easement, the propriety of this alternative nuisance holding is moot.

ASSIGNMENT OF ERROR NUMBER FIVE

**{¶44}** Appellants' fifth assignment of error contends:

**{¶45}** "THE TRIAL COURT ERRED IN OVERRULING THE APPELLANTS' MOTION FOR SUMMARY JUDGMENT AS TO THE FIFTEEN (15) YEAR STATUTE OF LIMITATIONS AS IT APPLIES TO EXPRESS EASEMENTS."

**{¶46}** This suit was brought by Ohio Edison on April 8, 2009. Appellants constructed the aboveground pool and shed in the easement's obstruction zone sometime in 1993. As they are not sure exactly what date in 1993 the structures were completed, they agree to use the last day of that year and urge that Ohio Edison's suit was untimely because it was not filed by December 31, 2008, fifteen years from the structures' erection. *See* R.C. 2305.06 (an action upon a writing must be brought within fifteen years after the cause accrued).

**{¶47}** The magistrate and Ohio Edison emphasize that the suit is based upon a continuing trespass, a continuing nuisance, and a continuing breach of the easement (rather than an action for past damages). On the latter point, Ohio Edison states that it has a perpetual and continuing right to the keep the land clear of obstructions. Ohio Edison alternatively points out that the statute of limitations for compelling the removal of encroachments from property is twenty-one years. *See* R.C. 2305.04 ("An action to recover the title to or possession of real property shall be brought within twenty-one years after the cause of action accrued").

{¶48} The discovery rule applies to toll the statute of limitations for nuisance or trespass. *See, e.g., Sexton v. Mason*, 117 Ohio St.3d 275, 2008-Ohio-858, 883 N.E.2d 1013, ¶ 52-53; *Harris v. Liston*, 86 Ohio St.3d 203, 207, 714 N.E.2d 377 (1999). Still, any factual issues regarding the discovery of the obstructions are not relevant to determine when the cause of action accrued if there was a continuing violation of the utility's rights.

{¶49} "There are cases in which the original act is considered as a continuing act, and daily giving rise to a new cause of action. Where one creates a nuisance, and permits it to remain, so long as it remains it is treated as a continuing wrong, and giving rise, over and over again, to causes of action. But the principle upon which one is charged as a continuing wrongdoer is, that he has a legal right, and is under a legal duty, to terminate the cause of the injury." *State v. Schwartz*, 88 Ohio St.3d 131, 135, 723 N.E.2d 1084 (2000) (a criminal case that set forth and relied upon the rule in civil cases), quoting *Kansas Pacific Ry. Co. v. Mihlman*, 17 Kan. 224, 231 (1876).

{¶50} Thus, where one creates a nuisance and permits it to remain, so long as it remains, and is within the control of the actor, the nuisance constitutes a continuing course of conduct tolling the limitations period until the continuing course of conduct or the accused's accountability for it terminated. *Schwartz*, 88 Ohio St.3d at 135, adopting *Boll v. Griffith*, 41 Ohio App.3d 356, 535 N.E.2d 1375 (1987) (razing a row house but leaving portions hanging from neighboring property which gradually caused deterioration of neighboring wall is a continuing violation of the neighbor's rights for purposes of statute of limitations); *Valley Ry. Co. v. Franz*, 43 Ohio St. 623, 626, 4 N.E. 88 (1885) (finding that the single act of directing the flow of a river from one's own land so that it damages another's land constitutes a continuous trespass each time the harm is suffered).

{¶51} "But where the act of trespass is a permanent trespass, as the erection of buttresses to support a turnpike road or *the erection and maintenance of a permanent building, it may be said to be a continuing trespass or nuisance* for which a cause of action accrues, and may be brought at any time until, by adverse use or

possession, the trespasser has enforced an adverse claim that has ripened, and has become a presumptive right or a valid estate." (Emphasis added and citations omitted). *Sexton*, 117 Ohio St.3d 275, 883 N.E.2d 1013, 2008-Ohio-858, ¶ 33, quoting *Valley Ry.*, 43 Ohio St. at 626.

**{¶52}** As Ohio Edison notes, the twenty-one year period has not elapsed (assuming the adverse possession doctrine is applicable here). And, the same people who built the structures still maintain and use them to this day in violation of the express easement. See *Sexton*, 117 Ohio St.3d 275 at ¶ 45 (ongoing conduct or retention of control is the key to continuing trespass).

**{¶53}** The continuing violation doctrine "is rooted in general principles of common law and is independent of any specific action." *Hensley v. City of Columbus*, 557 F.3d 693, 697 (6th Cir.2009) (outlining the elements of a continuing violation claim: defendant's continuing wrongful conduct; injury to plaintiff accrues continuously; and had the defendants at any time ceased their wrongful conduct, further injury would have been avoided). Thus, the continuing violation doctrine is not relevant to merely trespass and nuisance causes of action.

**{¶54}** It also applies to deprivations of other legal or contractual rights, such as the breach of an express easement here. *See id.* In fact, a landowner's breach of an easement by interfering with the easement holder's rights thereunder is akin to a trespass action. See *Mastro ex rel. Mastro v. Matthews*, 3d Dist. No. 9-01-08 (Nov. 15, 2001) (if the owner of land burdened by an easement interferes with the easement, the appropriate remedy is an injunction when the interference would constitute a continuing trespass on the property subject to the easement).

**{¶55}** Where new harm occurs on a continuing basis due to continuing course of conduct, the statute of limitations begins anew each day of the harm. Here, arcing can occur at any time. Appellants' erection of structures on property subject to a utility electric line easement may have been a breach of the easement in 1993. However, the structures also create a continuous risk of arcing (in violation of a code with which the utility has the obligation to abide by) every day. In other words, these structures continue to be located in the obstruction zone of the easement and

continue to pose a risk of arcing and harm to the utility due to that risk and the lower transmission requirements in the NESC. In fact, it was mentioned that the aboveground pool's level of risk changes depending on the water level, further supporting the application of the continuing breach doctrine. And, appellants continue *to use* the shed and *to swim* in the aboveground pool. *See Sexton*, 117 Ohio St.3d 275 at ¶ 45.

**{¶56}** In other words, Ohio Edison is not suing because appellants breached the easement by erecting a pool and shed at some time in the past; they are not seeking past damages for a completed injury or trespass. The breach is in continual existence as the structures remain in use by people who originally constructed them in the easement's obstruction zone (and were found to be actual obstructions by virtue of lying in the NESC arcing zone). Notably, the easement language does not actually prohibit a landowner from erecting structures or planting trees in the obstruction zone; it merely provides Ohio Edison the right to eliminate any items placed in the delineated zone if they are or become obstructions to the use of the easement.

**{¶57}** In accordance, the fifteen-year statute of limitations did not expire because the obstructions not only continued to exist but continued to be used by the original actors and continued to cause a dangerous situation and a violation of the NESC every day that they remained in the arcing zone. As such, this assignment of error is overruled.

ASSIGNMENT OF ERROR NUMBER SIX

**{¶58}** Appellants' sixth assignment of error provides:

**{¶59}** "THE TRIAL COURT ERRED IN OVERRULING THE APPELLANTS' AFFIRMATIVE DEFENSES OF LACHES, WAIVER, AND ESTOPPEL."

**{¶60}** Appellants note here that Ohio Edison was required to inspect its lines once a year. *See* Ohio Adm. Code 4901:1-10-27(D)(2). Appellants urge that laches should prohibit Ohio Edison from enforcing any right to remove the structures because they waited too long to enforce their rights where the pool and shed have existed since 1993, more than fifteen years since the filing of the suit herein.

Appellants also state that they checked with someone at Ohio Edison before constructing the pool and that they would not have placed the structures in these locations had Ohio Edison told them not to at the time.

{¶61} Ohio Edison urges here that appellants failed to file a specific objection regarding laches, estoppel, or waiver, and thus, appellants cannot now assign these topics as error on appeal. In the pertinent portion of their objections, appellants stated:

{¶62} "As to ¶¶19 and 20, the Wilkes submit that their affirmative defenses have merit and that since an Easement is a contract, the Statute of Limitations bars Ohio Edison from bringing an action in breach thereof more than 15 years after the breach's occurrence."

{¶63} The magistrate's decision at paragraph 19 stated that appellants' affirmative defenses lacked merit, that equity does not acknowledge the extinguishment of such an easement by recourse to estoppel or laches, and that the easement is perpetual and not subject to expiration, citing *Gannon v. Klockenga*, 9th Dist. No. 22946, 2006-Ohio-2972, ¶ 24. Paragraph 20 dealt solely with the statute of limitations defense.

{¶64} "An objection to a magistrate's decision shall be specific and state with particularity all grounds for objection." Civ.R. 53(D)(3)(b)(ii). According to Civ.R. 53(D)(3)(b)(iv), a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion unless the party has objected to that finding or conclusion as required by Civ.R. 53(D)(3)(b).

{¶65} Although the sentence used by appellants as an objection does refer to affirmative defenses in the plural and refers to paragraph 19 of the magistrate's decision which paragraph makes a finding regarding laches and waiver, the objection itself only specifically refers to the statute of limitations (addressed in the prior assignment of error). It does not specifically mention laches, estoppel, or waiver. Accordingly, it is not specific and does not state with particularity all grounds for objection as required by Civ.R. 53(D)(3)(b)(iv). This would bar the assignment of

these topics on appeal. Civ.R. 53(D)(3)(b). In any event, appellants' arguments were properly overruled.

**{¶66}** In general, laches requires: (1) a delay or lapse of time in asserting a right; (2) absence of an excuse for such delay; (3) knowledge, actual or constructive, of the injury; (4) prejudice to the other party. *State ex rel. Cater v. N. Olmsted*, 69 Ohio St.3d 315, 325, 631 N.E.2d 1048 (1994). Estoppel deals with "reasonable reliance" and a consequent "detriment." *State ex rel. Chavis v. Sycamore City Sch. Bd. of Edn.*, 71 Ohio St.3d 26, 34, 641 N.E.2d 188 (1994).

**{¶67}** Ohio Edison argues that laches and estoppel cannot defeat the express easement. There is valid law supporting this assertion that there is no extinguishment of an express easement based upon estoppel and laches. For instance, the Eleventh District held that, notwithstanding the compelling arguments pertaining to the relative equities, equity does not acknowledge the extinguishment of an express easement by estoppel or laches. *Lone Star Steakhouse & Saloon of Ohio, Inc. v. Ryska*, 11th Dist. No. 2003-L-192, 2005-Ohio-3398, ¶ 50.

**{¶68}** The Ninth District has held accordingly. *Merrill Lynch Mtge. Lending, Inc. v. Wheeling & Lake Erie Ry. Co.*, 9th Dist. No 24943, 2010-Ohio-1827, ¶ 41-43, (quoting *Lone Star's* language that an express easement is not extinguished by estoppel or laches). In ruling that a prescriptive easement can be extinguished by estoppel and laches, the Sixth District distinguished such an easement from an express easement, thus opining that an express easement is not defeated by laches or estoppel. *Zimmerman v. Cindle*, 6th Dist. No. F-87-16 (June 17, 1988). *See also Witt v. Hill*, 6th Dist. No. 90WD099 (Dec. 17, 1991) (although an implied easement can be extinguished by lack of need, an express easement cannot).

**{¶69}** The federal appellate court for the Sixth Circuit has applied Ohio law to hold that Ohio courts do not apply the doctrines of laches and estoppel to an expressly granted easement. *Andrews v. Columbia Gas Transmission Corp.,* 544 F.3d 618, 630 (6th Cir.2008) (and stating that there is no indication that the Ohio Supreme Court would disagree with these holdings). *See also* 36 Ohio

Jurisprudence 3d, Easements and Licenses, Section 63 ("The doctrines of laches and estoppel are not applied to an expressly granted easement.").

**{¶70}** As for appellants' suggestion of waiver through abandonment, this doctrine requires nonuse or relinquishment of possession and an intent to abandon through decisive acts. *West Park Shopping Ctr. v. Masheter*, 6 Ohio St.2d 142, 144, 216 N.E.2d 761 (1966). It deals with abandonment of the easement itself, not abandonment of certain features of an easement (here the right to keep the land clear of obstructions within fifty feet of the center line). *See id. See also Fox v. Hart*, 11 Ohio 414, 416 (1842) (portion of road unused).

**{¶71}** The easement here has been continually in use by obvious power lines since before appellants purchased their lot. And, waiver is akin to estoppel and laches for purposes of an express easement. *See Andrews*, 544 F.3d at 630-631.

**{¶72}** Even if the equities were to be balanced here, equity would not allow the maintenance of a safety hazard. And, it is unreasonable to extinguish any part of an easement that would require deconstruction or diminution of electric transmission lines due to a homeowner's aboveground pool and shed. The equities involved are not just the typical competing rights of a dominant and servient estate. Rather, this is a matter of public safety, safety of the occupants of the pool, and maintenance of reliable utility transmission lines. Moreover, the equities involved in the case of a utility being held to laches where they must monitor miles and miles of lines across a multitude of properties is different than the holder of an easement over one piece of land as in a driveway case. For the foregoing reasons, this assignment is overruled.

<u>ASSIGNMENT OF ERROR NUMBER SEVEN</u>

**{¶73}** Appellants' seventh and final assignment of error alleges:

**{¶74}** "THE TRIAL COURT ERRED IN OVERRULING THE APPELLANTS' MOTION FOR SUMMARY JUDGMENT FOR TRESPASS, NUISANCE, AND INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS."

**{¶75}** In a two-sentence argument, appellants posit that if any other assignment of error has merit, then they should receive summary judgment on their

counterclaims for trespass, nuisance, and intentional infliction of emotional distress or should be permitted to proceed on these counterclaims.

{¶76} However, there is no indication that they should have received summary judgment on their counterclaims. For instance, there is no support for their suggestion that power lines that preexisted their house for decades can constitute a trespass where an express easement was granted prior to development of the area. Nor is their support for a claim that power lines became a nuisance by the landowner's act of building structures in the obstruction zone of the express easement. Likewise, there support for the position that a utility engages in intentional infliction of emotional distress by merely asking a landowner to move a structure and subsequently filing a suit to ask a court to determine whether the structure should be moved.

{¶77} In any event, there is no argument presented on appeal as to the merits of each cause of action in the counterclaim. Besides the lack of support for the above suggestions, there is no explanation as to why a ruling on another assignment would affect this assignment of error, and there is no law provided. Consequently, appellants have not properly briefed this assignment in the two sentences they set forth here.

{¶78} Pursuant to App.R. 16(A)(7), a party must support each of its assignments of error with an argument containing the contentions of the appellant and the reasons in support of the contentions, with citations to the authorities, statutes, and parts of the record on which appellant relies. We may disregard an assignment of error presented for review if the party raising it fails to identify in the record the error on which the assignment of error is based or fails to argue the assignment separately in the brief as App.R. 16(A) requires. App.R. 12(A)(2); *State v. Tri-State Group, Inc.*, 7th Dist. No. 03BE61, 2004-Ohio-4441, ¶ 24-25 ("Appellants' four-sentence paragraph in support of this assignment of error fails to comply with this requirement. The appellate brief fails to even try to explain why summary judgment was inappropriate."). The "lack of briefing" here allows us to disregard this assignment of error. *Wells Fargo, N.A. v. Jarvis*, 7th Dist. No. 08CO30, 2009-Ohio-

3055, ¶ 31-33, citing *Hawley v. Ritley*, 35 Ohio St.3d 157, 159, 519 N.E.2d 390 (1988).

**{¶79}** Moreover, appellants specifically made this assignment dependent upon their success on other assignments of error. As we have overruled the other assignments, this assignment of error is irrelevant under appellants' own assertions. For all of these reasons, this assignment of error should be overruled.

**{¶80}** For the foregoing reasons, the judgment of the trial court is hereby affirmed.

Donofrio, J., concurs.
DeGenaro, J., concurs.