NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 18a0635n.06

Case No. 17-6540

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

<table>
<tr><td>MATTHEW HOWELL</td><td>)</td><td></td></tr>
<tr><td></td><td>)</td><td></td></tr>
<tr><td>Plaintiff-Appellant,</td><td>)</td><td></td></tr>
<tr><td></td><td>)</td><td>ON APPEAL FROM THE UNITED</td></tr>
<tr><td>v.</td><td>)</td><td>STATES DISTRICT COURT FOR</td></tr>
<tr><td></td><td>)</td><td>THE MIDDLE DISTRICT OF</td></tr>
<tr><td>JOSEPH COX; GOVERNMENT OF</td><td>)</td><td>TENNESSEE</td></tr>
<tr><td>FAIRVIEW, TENNESSEE</td><td>)</td><td></td></tr>
<tr><td></td><td>)</td><td></td></tr>
<tr><td>Defendants-Appellees.</td><td>)</td><td></td></tr>
<tr><td></td><td>)</td><td></td></tr>
</table>

FILED
Dec 20, 2018
DEBORAH S. HUNT, Clerk

BEFORE: ROGERS, STRANCH, and THAPAR, Circuit Judges.

THAPAR, Circuit Judge. Matthew Howell's case began the way many eventful nights do: at a bar. While playing poker at the bar, Howell got into a verbal fight, and Officer Joseph Cox issued him a citation for public intoxication. After Howell's acquittal, he sued Cox and the City of Fairview, Tennessee, for malicious prosecution and retaliatory prosecution. The district court granted the defendants' motion for summary judgment. We affirm.

I.

Matthew Howell went to a bar to play poker and have a few drinks. But his night took a turn for the worse when he got into an argument with another poker player. Police were called to the scene, and Howell left the bar. Howell claims that he was not intoxicated and was "ready . . . to go," so he paid his tab and left. R. 31-1, Pg. ID 82. Officer Cox saw it differently. When Cox

arrived on the scene, he encountered Howell outside walking away from the bar. Cox stopped and spoke to Howell—who Cox said smelled like alcohol, was unsteady, and had bloodshot eyes. Howell confirmed that he had gotten into an argument at the bar. Cox then entered the bar to speak to the owner. According to Cox, the owner stated that her staff had stopped serving Howell alcohol and had asked him to leave because of his level of intoxication. The bar owner also told Cox that Howell had been using "foul language" even though children were present. R. 32-1, Pg. ID 125. When Cox returned outside, Howell was still using profanity and sexually explicit language. Cox then arrested Howell for disorderly conduct, but he ultimately decided to issue him a citation for public intoxication instead.

After arresting Howell, Cox took him to the police station to process him and fill out the citation. Howell then went home with a friend. When Howell's first trial ended in a mistrial, the court scheduled a second one. But Howell did not receive notice of this court date, so he failed to appear, and the court issued a warrant for his arrest. Cox, while out on patrol, saw Howell and temporarily detained him until the local sheriff's department arrived and officially arrested Howell. Howell spent fifteen days in jail before the court released him and rescheduled the second trial. When that trial finally happened, Howell was acquitted.

Nearly a year later, Howell sued Cox and the City of Fairview, Tennessee. Howell brought a § 1983 suit, alleging that the prosecution against him was malicious and retaliatory, in violation of his Fourth and First Amendment rights. After the district court granted summary judgment for the defendants, Howell appealed. We review his claims de novo. *Miller v. Maddox*, 866 F.3d 386, 389 (6th Cir. 2017).

II.

*Malicious prosecution.* Howell first claims that the defendants maliciously prosecuted him by arresting him on a charge without probable cause. Among other requirements of this claim, Howell must show that the criminal proceeding caused a deprivation of his liberty apart from the initial arrest and that the defendants caused that deprivation. *See Sykes v. Anderson*, 625 F.3d 294, 308–09 (6th Cir. 2010) (holding that a criminal proceeding must cause deprivation); *Powers v. Hamilton Cty. Pub. Def. Comm'n*, 501 F.3d 592, 597, 608–09 (6th Cir. 2007) (stating that causation must be tied to defendant). To meet this element, Howell points to the fifteen days he spent in jail and asserts that this deprivation was foreseeable to Cox.

In a typical case, a plaintiff has no trouble proving this element because the officer's initiation of the prosecution causes the deprivation. *See, e.g.*, *Sykes*, 625 F.3d at 301–02 (explaining that the plaintiffs were imprisoned after being convicted of charges for which the officers had manufactured evidence). But here, there was an intervening act that broke the causal chain. *Powers*, 501 F.3d at 609–10 (holding that an intervening act by a third party can break the causal chain between the defendant's conduct and the plaintiff's injury). To break the causal chain, the intervening act must have occurred after the defendant's conduct and must not have been reasonably foreseeable to the defendant. *Id.* at 610.

In cases arising from criminal proceedings, such as this one, a judge often commits an intervening act. A judge may, for example, make a finding of probable cause at a preliminary hearing or issue a warrant. Such an intervening act breaks the causal chain when the judge's action is independent from any misrepresentations, omissions, or other wrongdoing by the defendant. *See id.*; *DePiero v. City of Macedonia*, 180 F.3d 770, 789 (6th Cir. 1999) (rejecting a § 1983 unreasonable seizure claim against an officer because the officer "had no role in [the] issuance of

the bench warrant"); *see also Piazza v. Lakkis*, No. 3:11-21, 2013 WL 424724, at *4 (M.D. Pa. Feb. 4, 2013) (stating that the defendant was neither "personally [n]or directly involved" in the missed court date which led to the issuance of a bench warrant for the plaintiff). In this case, an intervening act broke the causal chain: the judge's issuance of the warrant for Howell's failure to appear. When Cox issued the public intoxication citation nearly three years earlier, he could not have reasonably foreseen that (1) the court would fail to notify Howell about the court date, (2) Howell would fail to appear, and (3) Howell would then be held in jail. This series of events may have been *imaginable*, but it was not *reasonably foreseeable*. *Cf. Hays v. Jefferson Cty.*, 668 F.2d 869, 871 n.1 (6th Cir. 1982).

Howell has not pointed to any evidence to suggest that Cox played a role in the court's decision to issue the warrant. Cox's role in *executing* the warrant does not show this. It also fails to prove that Howell's detention was reasonably foreseeable. To determine foreseeability, we look at when the defendant committed the allegedly wrongful conduct. *See Powers*, 501 F.3d at 609. So here, we examine the moment when Cox issued Howell the citation for public intoxication. At that moment, there was no indication that Howell would miss a court date more than two years later or that Howell would fail to receive notice of future court dates. To avoid this conclusion, Howell points to cases in which the intervening act of a grand jury, judge, or prosecutor did not break the causal chain. But in each of these cases the decision-maker relied upon the officer's misrepresentation, omission, or other wrongdoing when making the decision that deprived the plaintiff of her liberty. *See King v. Harwood*, 852 F.3d 568, 587–88 (6th Cir. 2017) (explaining that if an officer fabricates evidence to create the appearance of probable cause, an indictment does not prevent the plaintiff from proving that the prosecution lacked probable cause); *Miller*, 866 F.3d at 390–91, 393–94 (explaining that an officer could be held responsible for malicious prosecution

after a judge, in reliance on the officer's false testimony, set bond conditions that were a "deprivation of liberty"); *Sykes*, 625 F.3d at 314–15 (finding a sufficient causal link when the officer gave the prosecutor a warrant application and investigatory materials with knowingly false information, the prosecution approved the application, the judge issued the warrant, and then the plaintiff was arrested). Here, in contrast, Cox did not play a role in the judge's decision to issue the warrant.

Because Howell cannot prove that Cox foreseeably caused his deprivation of liberty, he cannot prove his malicious prosecution claim against Cox or the City of Fairview (for failing to supervise Cox). *See Floyd v. City of Detroit*, 518 F.3d 398, 411 (6th Cir. 2008) (stating that where there is no constitutional violation, there cannot be a violation for failure to train). Therefore, the defendants were entitled to summary judgment on Howell's malicious prosecution claim.

III.

*Retaliation*. Howell next argues that the district court incorrectly concluded that he filed his retaliation claim too late. The statute of limitations for retaliation is one year. *Hughes v. Vanderbilt Univ.*, 215 F.3d 543, 547 (6th Cir. 2000). And the statute begins to run "when the plaintiff knows or has reason to know" of his injury. *Id.*

Howell knew of his injury well over a year before he sued. He knew of it the night of his arrest in 2012. At that time, Howell was able to allege a prima facie case of retaliatory arrest or retaliatory prosecution: (1) protected speech (profanity and sexually explicit language), (2) adverse action (arrest and citation for public intoxication), (3) in retaliation for his speech, and (4) a lack of probable cause. *See Bickerstaff v. Lucarelli*, 830 F.3d 388, 399 (6th Cir. 2016) (retaliatory prosecution claim); *Wesley v. Campbell*, 779 F.3d 421, 435 (6th Cir. 2015) (retaliatory arrest claim). And because favorable termination of the criminal charge is not an element of either

retaliation claim, Howell did not have to wait to see how his case turned out. *Bickerstaff*, 830 F.3d at 399; *Wesley*, 779 F.3d at 435. Thus, Howell's 2016 suit was filed nearly four years later than it could have been, seemingly well beyond the one-year statute of limitations.

But Howell claims the violation was ongoing and thus, under the continuing-violation doctrine, he did not need to file his claim within one year of first discovering it. The continuing-violation doctrine has two categories. The first category applies if Howell can prove that Cox repeatedly violated his First Amendment rights, such that if Cox stopped his unconstitutional conduct, Howell would not have suffered additional injuries. *Hensley v. City of Columbus*, 557 F.3d 693, 697 (6th Cir. 2009) (refusing to apply the continuing-violation doctrine to the plaintiffs' due process claim that the city took their ground water because the city took the plaintiffs' ground water only one time); *Kuhnle Bros., Inc. v. Cty. of Geauga*, 103 F.3d 516, 522 (6th Cir. 1997) (finding that a county ordinance effectuated a continuing violation of the plaintiff's right to intrastate travel because the ordinance "actively deprived [the plaintiff] of its asserted constitutional rights every day that it remained in effect").

Cox arrested and then cited Howell—allegedly in retaliation for his speech. But Cox did not engage in ongoing conduct that amounted to repeated retaliatory arrests or prosecutions. Howell argues that he would not have suffered additional injuries if Cox had "ended the wrongdoing by telling the truth." Appellant Reply Br. 11. True, the prosecutor may have dismissed the case if Cox had come forward and said that Howell was not in fact intoxicated the night of the arrest. But any "injury" that Howell suffered because Cox did not come forward was merely an *effect* of Cox's initial arrest and citation—Howell had to continue defending himself against the prosecution. *See McCune v. City of Grand Rapids*, 842 F.2d 903, 905–06 (6th Cir. 1988). And to qualify as a continuing violation, Howell must prove that Cox's continuing unlawful

*acts* caused him to suffer continuing injuries. *See Hensley*, 557 F.3d at 697; *McCune*, 842 F.2d at 905–06. This he cannot do.

The second category of continuing violations exists when the defendant has committed several distinct acts of wrongdoing, and the cumulative effect of these acts amounted to a constitutional violation. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115–17 (2002); *Sharpe v. Cureton*, 319 F.3d 259, 266–67 (6th Cir. 2003). But if the defendant's separate acts of wrongdoing are individually actionable, the continuing-violation doctrine does not apply. *Morgan*, 536 U.S. at 113; *Bowerman v. Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am., Local No. 12*, 646 F.3d 360, 366–67 (6th Cir. 2011); *Sharpe*, 319 F.3d at 267. In *Sharpe*, for example, the continuing-violation doctrine did not apply to the plaintiffs' retaliation claim because the wrongful acts that the plaintiffs alleged—a discriminatory job transfer, a denial of merit pay, and a refusal to return the plaintiffs to their original employment locations—were separate acts of retaliation that were individually actionable. *Sharpe*, 319 F.3d at 267.

Howell argues that Cox committed a "continual scheme of retaliation." Appellant Br. 10. This scheme, according to Howell, included Cox's (1) arresting Howell, (2) issuing him the citation, (3) detaining him pursuant to the warrant, and (4) testifying falsely against him at the two trials. But the first two acts of wrongdoing are individually actionable, *see Bickerstaff*, 830 F.3d at 399 (retaliatory prosecution claim); *Wesley*, 779 F.3d at 435 (retaliatory arrest claim), so they cannot be part of a continuing violation, *see Sharpe*, 319 F.3d at 267. These claims could have been brought on the night of Howell's arrest in 2012—Cox did not need to commit any additional acts. *See Morgan*, 536 U.S. at 115. And Cox's allegedly wrongful detention and testimony at the trials do not help because Howell premised his retaliation claims in his complaint only on the arrest

and prosecution. So failure to advance these claims in his complaint defeats his argument before us.

The continuing-violation doctrine rarely applies to § 1983 claims, and this case is no exception. *Bowerman*, 646 F.3d at 366; *Sharpe*, 319 F.3d at 267. It may have been inconvenient for Howell to bring his retaliation claims while the prosecution was in progress, but that is what the law requires. Thus, Howell's retaliation claims, filed almost four years after his arrest in 2012, are time-barred.

We affirm.